JEFFREY DAVID ISAACS
426 Cottman Street
Jenkintown, PA 19046
Telephone: (917) 215-1909
Facsimile: (484) 422-8061
Email: jdi@alum.dartmouth.org

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY DAVID ISAACS | Case No. CV-06-3338 GAF (Ex) |
| Plaintiff, *pro se*, | **PLAINTIFF'S NOTICE OF APPEAL** |
| -V- | |
| UNIVERSITY OF SOUTHERN CALIFORNIA; ROBERT WILLIAM BAUGHMAN; BRIAN E. HENDERSON; PETER J. KATSUFRAKIS; and JAMES M. H. BALL, | **PRELIMINARY INJUNCTION APPEAL** |
| Defendants. | |

## NOTICE OF APPEAL

Notice is hereby given that Plaintiff Jeffrey David Isaacs hereby appeals to the United States Court of Appeals for the Ninth Circuit from the Court's August 15, 2006 order denying Plaintiff's Application for a Temporary Restraining Order, Order to Show Cause Why a Preliminary Injunction Should Not Issue, and Limited Expedited Discovery.

---

PLAINTIFF'S NOTICE OF APPEAL

No. CV-06-3338 GAF (Ex)

Pursuant to Circuit Rule 3-4 (b) (1), the requirement for a Civil Appeals Docketing Statement is waived because Plaintiff proceeds *pro se*.

Respectfully submitted, this 18th day of August, 2006

By *[signature]*

JEFFREY DAVID ISAACS
Plaintiff, *pro se*
426 Cottman Street
Jenkintown, PA 19046
Telephone: (917) 215-1909
Facsimile: (484) 422-8061
Email: jdi@alum.dartmouth.org

JEFFREY DAVID ISAACS
426 Cottman Street
Jenkintown, PA 19046
Telephone: (917) 215-1909
Facsimile: (484) 422-8061
Email: jdi@alum.dartmouth.org

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY DAVID ISAACS,<br><br>Plaintiff, *pro se*,<br><br>-V-<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA;<br>ROBERT WILLIAM BAUGHMAN;<br>BRIAN E. HENDERSON;<br>PETER J. KATSUFRAKIS;<br>and JAMES M. H. BALL,<br><br>Defendants. | Case No. CV-06-3338 GAF (Ex)<br><br>**PLAINTIFF'S MOTION FOR INJUNCTION PENDING APPEAL; MEMORANDUM IN SUPPORT; PROPOSED INJUNCTION**<br><br>Date:<br>Time:<br>Courtroom:  740 - Roybal<br>Judge:  Hon. Gary A. Feess |

-1-

## MOTION FOR INJUNCTION PENDING APPEAL

Pursuant to Fed. R. Civ. P. 62(c), Plaintiff Jeffrey David Isaacs hereby moves for this honorable Court to grant an injunction during the pendency of the appeal in the above-captioned case. The injunction requested shall enjoin Defendant USC from retaliating and discriminating against Plaintiff, thereby interfering with his enrollment at the Keck School of Medicine.

## MEMORANDUM IN SUPPORT OF INJUNCTION PENDING APPEAL

### Introduction

On November 16th, 2005 Plaintiff complained to a classmate about harassment (FAC ¶ 11). On January 9th, 2006 Plaintiff made certain Defendants aware of his intention to file this lawsuit (FAC ¶ 17). On January 11th and 17th, Defendants caused two fabricated harassment reports (*not* stalking reports) to be filed against Plaintiff, and Plaintiff alleges these were clear-cut instances of retaliation (Application for TRO, *Exhibit L at 2*). In a Settlement Letter dated January 17th (Application for TRO at 7), Plaintiff offered Defendants a copy of the [Draft] Verified Complaint, and also forwarded to them the pleading cover sheet that indicated his intention to seek preliminary injunctive relief.

Defendants moved quickly to suspend Plaintiff. Plaintiff was hospitalized and generally incapacitated for at least two months, and thus his efforts to secure injunctive relief were delayed by factors beyond his control. On May 30th, Plaintiff filed this lawsuit in the United States District Court. He sought a TRO that would preserve the *status quo ante litem*. Procedural deficiencies existed in his TRO application; as a *pro se* Plaintiff, he was unable to finalize the complete TRO Application until August 9th. Meanwhile, on June 13th, the Keck SPC voted to dismiss Plaintiff (Application for TRO at 9). The Keck SPC caused a formal dismissal letter to be sent to Plaintiff; it stated that Plaintiff was recommended for dismissal because of purported "essential character standards deficiency." *Id.* Plaintiff's academic performance at Keck was within Keck's range of acceptable performance, and was never alleged to be a reason for his dismissal. Moreover, Plaintiff received *strongly positive* character and clinical evaluations from no less than four professors and five clinical peers during the course of his studies at Keck (Application for TRO, *Exhibit L at 8*). In

medicine especially, the importance of clinical evaluations becomes paramount as one's career progresses. Plaintiff's clinical professor, a transplant surgeon at Cedars-Sinai Medical Center, wrote that the punishment of Plaintiff had become "unconscionable" (Application for TRO at 12). These favorable evaluations and statements were redacted from Plaintiff's student file (Application for TRO, *Exhibit L at 8*). Presumably, Defendants recognized the major flaw in their grounds for dismissal alleging character deficit, so they asserted a completely new allegation in their 12(b)(6) Motion to Dismiss: they accused Plaintiff of stalking a fellow classmate.

On August 15th, this Court denied Plaintiff's application for a TRO and OSC. The Court, as Plaintiff will demonstrate on appeal, applied the wrong legal standard in determining the nature of the injunctive relief sought. The last, uncontested status was prior to the January 9th letter-of-intent to file a lawsuit. The *status quo* to be preserved is thus the point at which Plaintiff was a student in good standing at Keck, or at the very least, the point he filed this lawsuit, which was prior to his Dismissal from Keck. Either way, the injunction sought would be prohibitory in nature, prohibiting Keck from dismissing Plaintiff. Because Plaintiff's suspension was finite by definition, prohibiting Keck from dismissing Plaintiff would effectively allow him to resume his studies. Thus, Plaintiff's being permitted to resume studies is a consequence of maintaining the *status quo*; it would be incorrect characterize the injunction as mandating an entirely new status.

Additionally, Plaintiff will assert that this Court reached erroneous conclusions of fact that are not supported by, and cannot be properly inferred from, the pleadings. These erroneous conclusions suggest that the Court did not fully appreciate the serious questions raised in this lawsuit.

<div align="center">Discussion</div>

**Incorrect Legal Standard**

The Ruling claims that Plaintiff seeks mandatory injunctive relief, which is particularly disfavored and should not be issued unless the facts and law clearly favor the moving party. *Anderson v. United States*, 612 F.2d 1112 (9th Circ. 1979). However, Plaintiff maintains, and will demonstrate in the appeal, that the relief sought is a preservation of the *status quo*. Plaintiff filed the present lawsuit on May 30th, alleging retaliation, and sought a TRO and preliminary injunction to keep him enrolled during the pendency of the lawsuit. Hence, the Court uses an incorrect legal standard in

denying Plaintiff's Application; Plaintiff does not ask for any affirmative, new status to be effected by the Defendants (*e.g.* compelling Plaintiff's admission to the medical school).

The function of a preliminary injunction is to maintain the *status quo ante litem* pending a determination of the action on the merits. The *status quo* is the last, uncontested status preceding the commencement of the controversy. *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808-809 (9th Cir. 1963), cert. denied, 375 U.S. 821, 84 S. Ct. 59, 11 L. Ed. 2d 55 (1963). <u>It is therefore necessary to examine what constituted the last, uncontested status of the parties</u>. *Washington Capitols Basketball Club, Inc. v. Barry*, 419 F.2d 472 (9th Circ. 1969). In *Washington*, the Ninth Circuit analyzed, by enumeration, a complex series of contract agreements to determine the last, uncontested status of a Professional Basketball players' team affiliation. Applying such an analysis to the Plaintiff's case, it is clear that the last, uncontested status was no later than May 31st, when Plaintiff was still enrolled at Keck. Plaintiff argues that, in fact, the last, uncontested status was on January 9th, prior to his notice of intent regarding this lawsuit. Regardless, it is clear that Plaintiff's lawsuit seeks to prohibit Defendants from retaliating and discriminating in violation of Section 504; this is not an argument of mere semantics, but rather, a straightforward assertion of the undeniable timeline of events.

**Erroneous Finding of Facts**

The Ruling on Plaintiff's Application for a TRO contains factual conclusions that are unsupported by the pleadings, and generally detrimental to Plaintiff's case. It states "[Plaintiff] was dismissed this past June because of what he calls 'essential character standards deficiency'" (8/15/06 Order at 1). Plaintiff never alleged that he himself has any sort of character deficiency. To the contrary, he describes that he was well-liked by his clinical peers and received strongly positive faculty evaluations of his character and professional behavior. The Court misconstrued Plaintiff's assertion; actually, Plaintiff's dismissal letter from Keck cited a purported 'essential character standards deficiency' as *Defendant USC's* grounds for dismissal (Application for TRO at 9).

The Court goes on to say that Plaintiff was dismissed for "what USC has characterized as stalking and harassing some of his classmates" (8/15/06 Order at 1). In doing so, the Court unnecessarily amplifies the Defendants' already fictitious claim, which never should have been

introduced in a motion to dismiss. Defendants have never characterized Plaintiff's behavior as stalking multiple classmates. Defendants, in their motion to dismiss, introduced an entirely new and unwarranted claim that Plaintiff was stalking one student, the daughter of Defendant Baughman. In fact, the evidence will clearly show that a retaliatory 'harassment' report was issued by this classmate, two days after Plaintiff announced he would be filing a lawsuit.

This Court mistakenly asserts that "after his dismissal, Isaacs filed the present lawsuit" (8/15/06 Order at 1). It is uncontested that the lawsuit was filed on May 30th, two weeks prior to Plaintiff's dismissal from Keck. Moreover, it is uncontested that Plaintiff announced his intention to file this lawsuit before any formal complaint against him was ever issued.

Similarly, the Court wrongly declares that Plaintiff seeks an order allowing him to attend classes after his dismissal (8/15/06 Order at 3). Plaintiff sought injunctive relief well before he was suspended, let alone dismissed. Plaintiff seeks an injunction that prevents Defendant USC from retaliating against him for his January 9th notice of lawsuit and other protected activities. Plaintiff concedes that there have been delays in his application for injunctive relief, but nonetheless, the last uncontested status is clearly prior to his suspension or dismissal from Keck.

**Likelihood to Prevail and Raising Serious Questions**

Because of the aforementioned erroneous factual conclusions, Plaintiff believes that the Court should have recognized that, at the very least, he has raised serious questions worthy of litigation. Plaintiff was dismissed because, allegedly, he had poor character. However, his formal character evaluations (of which there are many, in Keck's curriculum) were remarkably positive. Moreover, these character evaluations were redacted from his student file. Plaintiff has no immediate access to them without limited, expedited discovery, which this Court denied. Hence, it is a Catch-22 of sorts in Plaintiff's efforts to seek redress, as such character evaluations would further establish Plaintiff's likelihood to prevail.

Furthermore, Plaintiff introduced evidence that at least one of his professors called the disciplinary actions "unconscionable." He provided letters from classmates that indicated their extreme worry for his mental health. When members of an academic medical community are using words like "unconscionable," the doctrine of common fairness requires one to acknowledge that, at

the very least, serious questions seem to be raised. Likewise, third-party character references written prior to Plaintiff's enrollment at Keck cast serious doubt about the existence of any purported character deficit.

Finally, Plaintiff hereby cites a portion of the Ninth Circuit opinion in *Zukle v. Regents of The University of California*, 166 F.3d 1041 (9th Circ. 1999):

> "We recognize that extending deference to educational institutions must not impede our obligation to enforce the ADA and the Rehabilitation Act. Thus, we must be careful not to allow academic decisions to disguise truly discriminatory requirements. The educational institution has a "real obligation ... to seek suitable means of reasonably accommodating a handicapped person and to submit a factual record indicating that it conscientiously carried out this statutory obligation." *Wynne I*, 932 F.2d at 25-26. Once the educational institution has fulfilled this obligation, however, we will defer to its academic decisions."

Plaintiff argues that Defendants have sought to disguise the true discriminatory and retaliatory motivation behind Plaintiff's dismissal from Keck. Under the aforementioned standard set by the Ninth Circuit, the Court has the responsibility to enforce the Rehabilitation Act, and to assess the factual record in doing so. While this is underway, Plaintiff seeks a preliminary injunction to preserve the *status quo ante litem*. In denying Plaintiff's application, this Court has given absolute deference to Keck, reducing its ability to enforce the Rehabilitation Act.

**Balance of Hardships and Irreparable Injury**

Plaintiff reasserts his argument, from the Application for a TRO & OSC, that the balance of hardships tips sharply in his favor for a TRO and that he will suffer irreparable injury if Defendant USC is not enjoined from retaliating against him and dismissing him. Because classes started on Monday, August 14th, and given the timeframe required to prepare a thorough appeal to the Ninth Circuit, Plaintiff believes he will suffer an irreparable injury without an injunction pending the appeal, which will preserve the Ninth Circuit's ability to render a meaningful decision on the merits of Plaintiff's appeal.

<u>Conclusion</u>

For the foregoing reasons, Plaintiff respectfully requests that this honorable Court issue an injunction pending the Ninth Circuit appeal.

**THE [PROPOSED] INJUNCTION PENDING APPEAL**

Plaintiff seeks an injunction pending appeal that is essentially identical to the proposed TRO already on the Docket, which Plaintiff filed on August 10th with his Application for a TRO & OSC.

Respectfully submitted, this 18th day of August, 2006

By: *[signature]*

JEFFREY DAVID ISAACS
Plaintiff, *pro se*
426 Cottman Street
Jenkintown, PA 19046
Telephone: (917) 215-1909
Facsimile: (484) 422-8061
Email: jdi@alum.dartmouth.org

SCANNED

**CERTIFICATE OF SERVICE**

I hereby certify that the following documents

- NOTICE OF APPEAL [PRELIMINARY INJUNCTION APPEAL]
- MOTION FOR INJUNCTION PENDING APPEAL; MEMORANDUM IN SUPPORT

were served upon the parties, by FEDERAL EXPRESS, by mailing copies thereof to:

Robin D. Dal Soglio
27240 Turnberry Lane, Suite 200
Valencia, California 91355

Concurrent with this filing, Plaintiff is also immediately effecting service of this Notice of Appeal and Motion for Injunction Pending Appeal to all Defendants via FACSIMILE and/or EMAIL.

On this 18th day of August, 2006

By [signature]

JEFFREY DAVID ISAACS
Plaintiff, *pro se*
426 Cottman Street
Jenkintown, PA 19046
Telephone: (917) 215-1909
Facsimile: (484) 422-8061
Email: jdi@alum.dartmouth.org

Form 4.     Affidavit Accompanying Motion for Permission to Appeal In Forma Pauperis

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

JEFFREY DAVID ISAACS
Plaintiff,

V.                                        CASE NO. CV-06-3338 GAF (Ex)

UNIVERSITY OF SOUTHERN CALIFORNIA,
ROBERT WILLIAM BAUGHMAN,
BRIAN E. HENDERSON;
PETER J. KATSUFRAKIS;
and JAMES M. H. BALL,

Defendants.

| Affidavit in Support of Motion | Instructions |
|---|---|
| I swear or affirm under penalty of perjury that, because of my poverty, I cannot prepay the docket fees of my appeal or post a bond for them. I believe I am entitled to redress. I swear or affirm under penalty of perjury under United States laws that my answers on this form are true and correct. (28 U.S.C. § 1746; 18 U.S.C § 1621.) | Complete all questions in this application and then sign it. Do not leave any blanks: if the answer to a question is "0," "none," or "not applicable (N/A)," write in that response. If you need more space to answer a question or to explain your answer, attach a separate sheet of paper identified with your name, your case's docket number, and the question number. |
| Signed: *Jeffrey D. Isaacs* | Date: 8/18/06 |

My issues on appeal are:

(e)     For both you and your spouse estimate the average amount of money received from each of the following sources during the past 12 months. Adjust any amount that was received weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate. Use gross amounts, that is, amounts before any deductions for taxes or otherwise.

- 1 -

|  | Average monthly amount during the past 12 months | | Amount expected next month | |
|---|---|---|---|---|
| Income Source | You | Spouse | You | Spouse |
| Employment | $ 0 | $ NA | $ 0 | $ NA |
| Self-employment | $ 0 | $ NA | $ 0 | $ NA |
| Income from real property (such as rental income) | $ 0 | $ NA | $ 0 | $ NA |
| Interest and dividends | $ 0 | $ NA | $ 0 | $ NA |
| Gifts | $ 800 | $ NA | $ 800 | $ NA |
| Alimony | $ 0 | $ NA | $ 0 | $ NA |
| Child Support | $ 0 | $ NA | $ 0 | $ NA |
| Retirement (such as social security, pensions, annuities, insurance) | $ 0 | $ NA | $ 0 | $ NA |
| Disability (such as social security, insurance payments) | $ 0 | $ NA | $ 0 | $ NA |
| Unemployment payments | $ 0 | $ NA | $ 0 | $ NA |
| Public-assistance (such as welfare) | $ 0 | $ NA | $ 0 | $ NA |
| Other (specify) Student loans | $ 1200 | $ NA | $ 0 | $ NA |
| **Total monthly income:** | $ 2000 | $ NA | $ 800 | $ NA |

2. List your employment history, most recent employer first.
   *(Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of Employment | Gross Monthly Pay |
|---|---|---|---|
| Merrill Lynch | World Financial Ctr NY | 2000-2002 | $7,000 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

3. List your spouse's employment history, most recent employer first.
   *(Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of Employment | Gross Monthly Pay |
|---|---|---|---|
| NA | | | |
| | | | |
| | | | |
| | | | |

4. How much cash do you and your spouse have? $ __100__

Below, state any money you or your spouse have in bank accounts or in any other financial institution.

| Financial Institution | Type of Account | Amount You Have | Amount Your Spouse Has |
|---|---|---|---|
| Wachovia | Checking | $200 | NA |
| | | | |
| | | | |

If you are a prisoner, you must attach a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months in your institutional accounts. If you have multiple accounts, perhaps because you have been in multiple institutions, attach one certified statement of each account.

5. List the assets, and their values, which you own or your spouse owns. Do not list clothing and ordinary household furnishing.

| Home | Value | Other real estate | Value |
|---|---|---|---|
| NA | NA | NA | NA |
| | | | |
| | | | |

| Motor Vehicle 1 | Value | Make & Year | Model | Registration # |
|---|---|---|---|---|
| (Use car owned by parents) | | | | |
| **Motor Vehicle 2** | **Value** | **Make & Year** | **Model** | **Registration #** |
| | | | | |

- 3 -

| Other Assets | Value |
|---|---|
| Computer, Misc Personal Assets | $4,000 |
|  |  |
|  |  |

6. State every person, business, or organization owing you of your spouse money, and the amount owed.

| Person owing you or your spouse | Amount owed to you | Amount owed to your spouse |
|---|---|---|
| NA | NA |  |
|  |  |  |

7. State the persons who rely on you or your spouse for support.

| Name | Relationship | Age |
|---|---|---|
| NA | NA |  |
|  |  |  |
|  |  |  |

8. Estimate the average monthly expenses of you and your family. Show separately the amounts paid by your spouse. Adjust any payments that are made weekly, biweekly, quarterly, semiannually, or annually to show the monthly are.

| | You | Your Spouse |
|---|---|---|
| Rent or home-mortgage payment (include lot rented for mobile home)<br>• Are real estate taxes included? Yes / No<br>• Is property insurance included? Yes / No | $ 800 | $ NA |
| Utilities (electricity, heating fuel, water, sewer and telephone) | 100 | NA |
| Home maintenance (repairs & upkeep) | 0 | NA |
| Food | 700 | NA |
| Clothing | 0 | NA |
| Laundry and dry-cleaning | 0 | NA |
| Medical and dental expenses | 0 | NA |
| Transportation (not including motor vehicle payments) | 200 | NA |
| Recreation, entertainment, newspapers, magazines, etc. | 100 | NA |

- 4 -

| | | |
|---|---|---|
| Insurance (not deducted from wages or included in Mortgage payments)<br>• Homeowner's or renter's<br>• Life<br>• Health<br>• Motor Vehicle<br>• Other: _____ | 100 | NA |
| Taxes (not deducted from wages or included in Mortgage payments) (Specify: _____ ) | 0 | NA |
| Installment payments<br>• Motor Vehicle<br>• Credit card (name):<br>• Department Store (name):<br>• Other: _____ | 0 | NA |
| Alimony, maintenance, and support paid to others | 0 | NA |
| Regular expenses for operation of business, profession, or farm (attache detailed statement) | 0 | NA |
| Other (specify): _____ | 0 | NA |
| **Total Monthly Expenses:** | 2000 | NA |

9. Do you expect any major changes to your monthly income or expenses or in your assets or liabilities during the next 12 months?

   __YES__ Yes          _____ No

   If yes, describe on an attached sheet. Loss of student loan income

10. Have you paid – or will you be paying – an attorney any money for services in connection with this case, including the completion of this form?

    _____ Yes          __NO__ No

    If yes, how much? $ _____
    If yes, state the attorney's name, address, and telephone number.
    _____
    _____
    _____

- 5 -

11. Have you paid – or will you be paying – anyone other than an attorney (such as a paralegal or a typist) any money for services in connection with this case, including the completion of this form?

_____ Yes     <u>NO</u>_____ No

If yes, how much? $ _____

If yes, state the person's name, address, and telephone number.

_____

_____

_____

12. Provide any other information that will help explain why you cannot pay the docket fees for your appeal.

I have student loan debt amounting to about $150,000 which paid my cost-of-living for the last few years.

_____

_____

13. State the address of your legal residence.

426 Cottman Street, Jenkintown PA 19046

_____

_____

Your daytime phone number: ( 917 ) 215-1909

Your age: 29     Your years of schooling: 20

Your social security number: 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