LINK: 34



FILED
CLERK, U.S. DISTRICT COURT
MAR - 2 2007
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY DAVID ISAACS, <br><br> Plaintiff, <br><br> v. <br><br> UNIVERSITY OF SOUTHERN CALIFORNIA; ROBERT WILLIAM BAUGHMAN; BRIAN E. HENDERSON; PETER J. KATSUFRAKIS; and JAMES M.H. BALL, <br><br> Defendants. | Case No. CV 06-3338 GAF (Ex) <br><br> **MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

DOCKETED ON CM
MAR - 5 2007
BY _____ 021

I.

## INTRODUCTION

Pro se Plaintiff Jeffrey David Isaacs brings this action against the University of Southern California ("USC") and various individuals, alleging that he has been discriminated against because of his post-traumatic stress disorder and "Bipolar II Affective Disorder." Plaintiff contends that during his first year of medical school USC, a fellow female classmate ridiculed and harassed him, thereby exacerba

medical disabilities. He contends that the administrators at the medical school did not help him overcome his emotional distress, but rather were influenced by his classmate's father, Robert Baughman, who is also the director of the National Institutes of Health Neurological Disease division, to retaliate against Plaintiff and portray his classmate as a victim of stalking and harassment. After administrative hearings regarding his alleged harassment of his classmate, he was suspended and dismissed from USC.

On May 30, 2006, Plaintiff filed this action against USC and Baughman. On June 20, 2006, Plaintiff filed a First Amended Complaint ("FAC") against USC, Baughman, Brian E. Henderson (the Dean of the medical school), Peter J. Katsufrakis (Associate Dean of Student Affairs at the medical school), and James M.H. Ball (university counsel for USC), alleging, *inter alia*, violations of section 504 of the Rehabilitation Act, intentional infliction of emotional distress, and breach of contract. On August 15, 2006, the Court granted in part and denied in part Defendants' motion to dismiss the FAC.

On September 7, 2006, Plaintiff filed his Second Amended Complaint ("SAC"), alleging ten causes of action. Defendants now move to dismiss the SAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. As explained in greater detail below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion as follows:

1) **DENY** as to the First Cause of Action for retaliation under the Rehabilitation Act against USC;

2) **GRANT WITHOUT LEAVE TO AMEND** as to the Fourth Cause of Action for retaliation under the Americans with Disabilities Act ("ADA") as to Henderson, Katsufrakis, Ball, and Baughman;

3) **DENY** as to the Fourth Cause of Action for retaliation under the ADA as to USC;

4) **GRANT WITHOUT LEAVE TO AMEND** as to the Fifth Cause of Action for negligent infliction of emotional distress as to USC, Henderson, Katsufrakis, and Ball;

2

5) **DENY** as to the Sixth Cause of Action for breach of contract against USC;

6) **DENY** as to the Seventh Cause of Action for intentional interference with contract against all individual Defendants;

7) **GRANT WITHOUT LEAVE TO AMEND** as to the Eighth Cause of Action for defamation against USC, Katsufrakis, and Ball;

8) **DENY** as to the Ninth Cause of Action under Bivens against Baughman for First Amendment retaliation, but **GRANT WITHOUT LEAVE TO AMEND** as to the Fifth Amendment due process and Rehabilitation Act Bivens claims.

## II.

## STATEMENT OF FACTS

The following statement of facts outlines Isaacs' allegations, which the Court must assume to be true for purposes of analyzing this Rule 12(b)(6) motion. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). In setting forth this description of the suit, the Court offers no opinion on the likelihood that Isaacs will be able to substantiate these allegations if this case proceeds to trial.

Plaintiff Jeffrey David Isaacs alleges that in 1998, he suffered an "organic brain injury" that led to the appearance of "sustained psychiatric symptoms." In 2001, he was diagnosed with post traumatic stress disorder ("PTSD"), which resulted from an "elaborate hoax, carried out by colleagues, that targeted Plaintiff's vulnerabilities and heightened psychiatric sensitivity." While studying law at Vanderbilt University, Plaintiff was accepted to the USC Keck School of Medicine ("Keck"). He commenced his class work at Keck in August 2005.

During his first semester at Keck, Plaintiff had numerous social problems with his classmates, including Amy Baughman. Plaintiff contends that Ms. Baughman made inappropriate sexual advances toward him on various occasions. Plaintiff became so uncomfortable that he contacted Ms. Baughman to attempt to persuade her to cease her offensive behavior. Plaintiff contends that he was unsuccessful as Ms. Baughman continued to taunt him, thereby exacerbating his psychiatric condition.

Ms. Baughman's actions escalated so much that he was compelled to send Ms. Baughman a series of offensive text messages, which he believes were written as a result of his Bipolar II diagnosis.

After these incidents, Ms. Baughman met with Defendant Peter J. Katsufrakis, the Associate Dean for Student Affairs, regarding the text messages. Katsufrakis arranged a group meeting with Plaintiff and Ms. Baughman, in which he attempted to discuss the situation and endeavored to persuade Plaintiff to voluntarily accept a stay-away order. Plaintiff refused and demanded that Baughman be directed to cease taunting and harassing him on the basis of his psychiatric disability. However, Katsufrakis "shrugged off this request." During this time, Katsufrakis allegedly counseled Plaintiff on multiple occasions, and during one of these counseling sessions, Plaintiff tearily described his disability condition to Katsufrakis.

Over winter break, Plaintiff resumed contacting Ms. Baughman and sent her emails detailing his fragile psychiatric state. This led Ms. Baughman to complain about Plaintiff, who was then subject to more harassing behavior by Ms. Baughman's friends.

On January 9, 2006, Plaintiff sent a letter to Ms. Baughman and her father, Defendant Robert Baughman, a Director of the National Institutes of Health ("NIH") Neurological Diseases division, in which he stated his intent to file a civil lawsuit. Plaintiff alleges that Defendant Baughman immediately contacted Defendant Katsufrakis and Defendant Brian E. Henderson, Dean of the medical school, and informed them that he was "flying out to California to 'consider how to proceed.'" The next day, within hours of Defendant Baughman allegedly speaking with the USC Defendants from NIH headquarters, Plaintiff was issued a stay-away order. Soon afterwards, Ms. Baughman filed a harassment report against Plaintiff, alleging that Plaintiff had stalked her. Believing that Defendant Baughman had improperly communicated with Defendants Katsufrakis and Henderson to harm his standing at USC, Plaintiff sent a Settlement Offer and Verified Complaint "pleading cover" to

4

Defendant Baughman and Ms. Baughman, asking them to cease any action that would impede his progress in medical school.

Later, a fellow classmate named David Braxton called Plaintiff and yelled at him to stay away from Ms. Baughman and to drop all complaints. Braxton then "spearheaded a retaliatory complaint" with the school's Student Performance Committee ("SPC") to consider Plaintiff's status as a medical student. While the stay-away order was in effect, Plaintiff allegedly suffered more acute mental distress. He also failed a hematology final exam and contacted Ms. Baughman in violation of the stay-away order to discuss a resolution to their problem.

On February 27, 2006, Plaintiff attended a disciplinary hearing before the Student Performance Committee ("SPC"), where he admittedly did not contest most of the allegations (i.e., the stalking allegations) against him, though he now claims they were false. In addition, he alleges that Defendants Katsufrakis and James M.H. Ball, university counsel for USC, deliberately prevented favorable evidence and testimony for Plaintiff from being presented at the SPC hearing. The next day, the SPC notified Plaintiff that he was to be suspended immediately and his dismissal from the school was imminent.

Traumatized by these events, Plaintiff was admitted to the UCLA Neuro-Psychiatric Hospital and remained there for approximately one month. After being discharged for outpatient care, he, through his treating physician, requested a retroactive leave of absence, in lieu of suspension, so that he could return to his studies at Keck. USC denied this request.

On May 30, 2006, Plaintiff filed this lawsuit and requested USC postpone Plaintiff's dismissal hearing, which was scheduled for June 7, 2006. The hearing went ahead as scheduled. On June 13, 2006, USC dismissed Plaintiff from the medical school. On June 22, 2006, Plaintiff's attorney filed an appeal to reverse the dismissal recommendation. As of the filing of the SAC, no decision had been rendered regarding Plaintiff's appeal.

## III.

## DISCUSSION

### A. THE LEGAL STANDARD FOR A RULE 12(B)(6) MOTION TO DISMISS

A motion to dismiss a complaint tests the legal sufficiency of the claims asserted. Fed. R. Civ. P. 12(b)(6). A court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Thus, dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). The Court accepts all factual allegations pleaded in the complaint as true in deciding a motion to dismiss for failure to state a claim; in addition, it construes those facts and draws all reasonable inferences from them in favor of the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). However, the Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

### B. ANALYSIS

#### 1. FIRST CAUSE OF ACTION - RETALIATION UNDER THE REHABILITATION ACT AGAINST USC

Plaintiff first alleges that Defendant USC retaliated against him in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. To establish retaliation, a plaintiff must demonstrate that: (1) he engaged in a protected activity; (2) defendant knew he was involved in the protected activity; (3) an adverse action was taken against him; and (4) a causal connection exists between the protected activity and the adverse action. Alex G. ex rel. Dr. Steven G. v. Board of Trustees of Davis Joint Unified Sch. Dist., 387 F. Supp. 2d 1119, 1128 (E.D. Cal. 2005) (citing Weixel v. Board of Educ., 287 F.3d 138, 148 (2d Cir. 2002)).

Here, Plaintiff alleges at least three legally protected activities. First, on November 23, 2005, he met with Dean Katsufrakis, the Associate Dean of Student Affairs, and told him that the suggestion of a school stay-away order could amount to harassment since Plaintiff believed he was the victim of harassment due to his PTSD. (SAC ¶¶ 16, 48.) Second, through his UCLA doctor, he submitted a disability accommodation request for retroactive medical leave due to his PTSD, a request that was ultimately denied. (Id. ¶¶ 36-37, 48.) Finally, after his suspension but before his dismissal, he filed this lawsuit alleging disability discrimination. (Id. ¶ 39.) Thus, the Rehabilitation Act retaliation claim survives against Defendant USC, and the motion is **DENIED** on this ground.

### 2. FOURTH CAUSE OF ACTION - RETALIATION UNDER THE ADA AGAINST ALL DEFENDANTS

Plaintiff also alleges that all Defendants retaliated against him in violation of Title II of the ADA. The ADA prohibits discrimination against any individual who has opposed an unlawful act of discrimination, made a charge of discrimination, or participated in any manner in an investigation or proceeding under the ADA. 42 U.S.C. § 12203(a). To establish a cause of action for retaliation under the ADA, a plaintiff must show that: (1) he engaged in a protected activity; (2) suffered an adverse action; and (3) there was a causal link between the two. Pardi v. Kaiser Foundation Hosps., 389 F.3d 840, 849 (9th Cir. 2004).

#### a. The Anti-Retaliation Provision of the ADA Does Not Provide for Individual Liability

First, Defendants argue that the anti-retaliation provision of the ADA does not provide for individual liability. The Ninth Circuit has not specifically ruled on this issue, but the majority of other circuits and district courts in the Ninth Circuit agree that the anti-retaliation provision of the ADA does not extend to individual defendants. See, e.g., Baird v. Rose, 192 F.3d 462, 471-72 (4th Cir. 1999); Hiler v. Brown, 177 F.3d 542, 545-46 (6th Cir. 1999); Van Hulle v. Pac. Telesis Corp., 124 F. Supp. 2d 642,

646 (N.D. Cal. 2000); Stern v. Cal. State Archives, 982 F. Supp. 690, 693-94 (E.D. Cal. 1997); Cai v. Chiron Corp., No. C 04-1587 CRB, 2004 WL 1837985, at *4 (N.D. Cal. Aug. 17, 2004). These cases hold that a plaintiff "cannot maintain an ADA retaliation claim against entities which are not otherwise subject to Subchapters I, II, and III of the ADA." Van Hulle, 124 F. Supp. 2d at 646. Though subsection 12203(a) broadly prohibits retaliation by a "person," subsection 12203(c) outlines the remedies available to a plaintiff complaining of retaliation by referring that individual to the remedial sections of the appropriate subchapter. Stern, 982 F. Supp. at 693. Here, Plaintiff brings his ADA claims pursuant to Subchapter II. (SAC ¶¶ 51-56.) Accordingly, an aggrieved person who claims that a "person" retaliated against him or her in the context of public services is referred to Section 12133. Id. Section 12133 refers such claims to the remedial provisions of 29 U.S.C. § 794a, which incorporates Title VI of the Civil Rights Act, and thus permits actions against any recipient of Federal assistance or provider of such assistance. See Ferguson v. City of Phoenix, 157 F.3d 668, 677 (9th Cir. 1998). In this case, based on Plaintiff's allegations, only USC would be liable for retaliation because he alleges that USC is a public entity that receives NIH federal funds. (SAC ¶¶ 4, 50, 53.) However, the individual Defendants would not be liable because they are not covered by the relevant remedial scheme. But see Ostrach v. Regents of the Univ. of Cal., 957 F. Supp. 196 (E.D. Cal. 1997).

The pertinent authority persuades the Court, as set forth most clearly in Stern, that the individual Defendants are not liable for retaliation under the ADA because they are not recipients of federal assistance. Accordingly, the motion on the ADA retaliation claim is **GRANTED WITHOUT LEAVE TO AMEND** with respect to the individual Defendants.

### b. Plaintiff Adequately Alleges a Protected Activity with Respect to USC

Defendants also contend that Plaintiff has not adequately alleged a protected activity for this claim. However, as explained above, Plaintiff has alleged protected

activities, such as his complaint to Dean Katsufrakis in November 2005 and his accommodation request for retroactive medical leave in March 2006. Thus, Plaintiff has adequately pled a protected activity with regards to USC. The motion on the ADA retaliation claim is thus **DENIED** with respect to USC.

### 3. FIFTH CAUSE OF ACTION - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM AGAINST USC, KATSUFRAKIS, HENDERSON, AND BALL

Plaintiff also brings a negligent infliction of emotional distress ("NIED") cause of action against all Defendants except Baughman. (SAC ¶¶ 57-63.) NIED is not an independent tort, but is a part of the broader tort of negligence to which the traditional elements of duty, breach of duty, causation, and damages apply. Christensen v. Superior Court, 54 Cal. 3d 868, 884 (1991). The duty element is a question of law to be resolved by the court rather than by a jury. Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc., 48 Cal. 3d 583, 588 (1989). "A complaint which lacks facts to show that a duty of care was owed is *fatally defective*." Wise v. Superior Court, 222 Cal. App. 3d 1008, 1013 (Ct. App. 1990) (emphasis added).

Here, Plaintiff merely alleges that "[i]t is well settled under California common law that school administrators have a duty to protect students from the emotional distress brought on by bullying and harassment." (SAC ¶ 59.) Plaintiff ignores those California cases that have consistently held that, in the absence of a special relationship, *universities* have no duty to supervise college-age students from behavior that causes injury to another student. See, e.g., Ochoa v. Cal. State Univ., 72 Cal. App. 4th 1300, 1305-06 (Ct. App. 1999), disapproved of on other grounds by Avila v. Citrus Cmty. Coll. Dist., 38 Cal. 4th 148 (2006) (no duty to protect college student playing in soccer game who was punched by member of rival team); Crow v. State of Cal., 222 Cal. App. 3d 192, 207-09 (no special relationship existed between university and student, and thus university had no duty to protect student assaulted by another student, even where university knew of prior acts of assault). Because Plaintiff does not (and indeed cannot) allege the existence of a special relationship

9

which warrants departure from the general rule, he fails to state an NIED claim against USC.

With respect to individual Defendants Katsufrakis and Henderson, Plaintiff alleges that because they are medical physicians, they are "held to a heightened standard in their ability to recognize the symptoms of psychiatric disorders and to prevent unnecessary suffering from emotional distress." (SAC ¶ 59.)  While this rule applies where a doctor-patient relationship exists, nowhere in the SAC does Plaintiff allege that he was a patient of either Katsufrakis or Henderson, such that a duty to recognize symptoms and prescribe proper treatment arose.  Though Plaintiff does allege that Katsufrakis counseled him (id. ¶ 17), the SAC reflects that Katsufrakis counseled Isaacs in his role as Associate Dean of Student Affairs, not as Isaacs' physician.  Without such a physician-patient relationship, a physician owes no duty of attention and care to a potential patient.  See Pettus v. Cole, 49 Cal. App. 4th 402, 430 (Ct. App. 1996).

Finally, with respect to Defendant Ball, USC's counsel, Plaintiff does not even allege that Ball owed a duty of care to Plaintiff.  (See SAC ¶ 59.)  Though Plaintiff attempts to cure this defect by arguing in his Opposition that "there is little question that Defendant Ball was involved in the situation and played a role in the Defendants' negligent inaction" (Opp. at 19), even if this belated assertion cured the defect, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Car Carriers v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984); Maynard v. Bonta, No. CV 02-6539 (MMM), 2002 U.S. Dist. LEXIS 26728, at *66 (C.D. Cal. Dec. 2, 2002).  In any event, the assertion that Ball was "involved" and "played a role" state conclusions that fall far short of establishing a duty on which a negligence claim could be based and thus would not save the claim against a Rule 12(b)(6) motion even if they had been included in the SAC.  See N. Star Int'l. v. Ariz. Corp. Comm'n, 720 F.2d 578, 583 (9th Cir. 1983).

//

Thus, because Plaintiff has not adequately pled that Defendants owed a legal duty of care to him, and because the Court concludes that there is no basis upon which such a duty could be pled, the Motion to Dismiss the NIED cause of action is **GRANTED WITHOUT LEAVE TO AMEND** and the claim is **DISMISSED WITH PREJUDICE.**

### 4. SIXTH CAUSE OF ACTION - BREACH OF CONTRACT AGAINST USC

To plead breach of contract against USC, Plaintiff must plead: (1) the existence of the contract; (2) the plaintiff's performance or excuse for nonperformance; (3) the defendant's breach; and (4) resulting damages to the plaintiff. Reichert v. Gen. Ins. Co., 68 Cal. 2d 822, 830 (1968); Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1388 (Ct. App. 1990).

#### a. Existence of a Contract

Defendants first argue that Plaintiff has not adequately pled "offer and acceptance" because he does not allege that he has ever read, was aware of, or relied on USC's policies prohibiting retaliation or the LCME accreditation standards before accepting the offer to enroll at USC. (Mot. at 12-13.) However, such a heightened pleading standard is not necessary. See Fed. R. Civ. P. 8(a)(2). Plaintiff alleges that in early 2005, he accepted an offer to enroll at the USC Keck School of Medicine, and thereby "entered into a contractual relationship with the University, in which all bulletins, regulations, policies, and accreditation standards formed the basis for numerous explicit and implicit contractual rights" between Plaintiff and USC. (SAC ¶ 65.) This allegation is enough to allege that there was a contract between Plaintiff and USC. Defendants own authority, Zumbrun v. Univ. of S. Cal., 25 Cal. App. 3d 1, 10 (Ct. App. 1972), supports the opposition because it held that the "basic legal relation between a student and a private university or college is contractual in nature. The catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant become a part of the contract." Because Plaintiff uses virtually

identical language to allege a contract between him and USC, he has adequately pled the existence of a contract.

### b. Exhaustion of Administrative Remedies

Defendants also argue that the breach of contract claim should be dismissed for failure to exhaust administrative remedies under Cal. Civ. Proc. Code § 1094.5. While administrative mandamus is normally available in this context, Gupta v. Stanford Univ. 124 Cal. App. 4th 407, 411 (Ct. App. 2004); Pomona Coll. v. Superior Court, 45 Cal. App. 4th 1716, 1727 (Ct. App. 1996), section 1094.5 does not apply to claims alleging discrimination. Pomona Coll., 45 Cal. App. 4th at 1724 n.4, 1726-27.

This issue was raised in prior motions made by Defendants. In addressing the issue, this Court wrote:

> The question for this Court is whether a non-discrimination cause of action that is factually rooted in allegedly discriminatory conduct is subject to the exhaustion requirement. While the Court can find no California authority directly on point, the Court concludes that the allegations of the Second and Third Causes of Action are sufficiently intertwined with the discrimination claim that Isaacs need not exhaust administrative remedies under Section 1094.5

Order, August 15, 2006, at 3.

The Court has been presented with no authority that suggests that its prior conclusion should be altered. Accordingly, because the evidence in support of the breach of contract claim is intertwined with the evidence support the claims of discrimination, the Court concludes that Plaintiff need not exhaust his administrative remedies before bringing his breach of contract claim here. Accordingly, the Court **DENIES** Defendants' motion to dismiss the breach of contract claim.

//
//
//

### 5. SEVENTH CAUSE OF ACTION - INTENTIONAL INTERFERENCE WITH CONTRACT CLAIM AGAINST ALL INDIVIDUAL DEFENDANTS

To prevail on a claim for intentional interference with contract, the plaintiff must establish the following elements: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." Pac. Gas & Elec. Co. v. Bear Stearns & Co., 50 Cal. 3d 1118, 1126 (1990).

Here, Defendants argue solely that Plaintiff has not adequately pled the individual Defendants' knowledge of the contract between Plaintiff and USC. (Mot. at 15.) This argument fails. Throughout his SAC, Plaintiff alleges that the individual Defendants were aware of Plaintiff's status as a medical student at USC, especially because they participated in meetings and hearings regarding his status as a student at USC. (See, e.g., id. ¶¶ 16, 20, 23, 32, 34.) Their knowledge that he was a USC student satisfies the knowledge requirement that he had a contract with USC. See Sebastian Int'l, Inc. v. Russolillo, 162 F. Supp. 2d 1198, 1203-04 (C.D. Cal. 2001) (applying California law, court held that plaintiff "does not have to identify the specific contractual relations which have allegedly been disrupted"); Zumbrun, 25 Cal. App. 3d at 10 (legal relationship between a student and a private university is a contractual one). Accordingly, the Court **DENIES** Defendants' motion as to the intentional interference with contract cause of action.

### 6. EIGHTH CAUSE OF ACTION - DEFAMATION CLAIM AGAINST USC, KATSUFRAKIS, AND BALL

Defendants move to dismiss this cause of action on two grounds: (1) failure to exhaust administrative remedies; and (2) the alleged communications made by these Defendants are privileged.

### a. Exhaustion of Administrative Remedies

As discussed above, because the defamation claim incorporates Plaintiff's claims of discrimination, Plaintiff need not exhaust his administrative remedies under Cal. Civ. Proc. Code § 1094.5 before asserting his defamation claim here.

### b. Defendants' Alleged Communications Are Privileged

California Civil Code § 47(b) provides: "A privileged publication or broadcast is one made . . . [i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to [Cal. Civ. Proc. Code § 1084 et seq.]." Cal. Civ. Code § 47(b). To be privileged, the publication must have some connection or logical relation to the proceeding. Royer v. Steinberg, 90 Cal. App. 3d 490, 507 (Ct. App. 1979). The privilege is absolute and unaffected by the presence of malice, Tiedemann v. Superior Court, 83 Cal. App. 3d 918, 924 (Ct. App. 1978), and extends to proceedings of administrative boards and quasi-judicial bodies. See, e.g., Brody v. Montalbano, 87 Cal. App. 3d 725, 732 (Ct. App. 1978).

To determine whether an administrative body or agency possesses quasi-judicial power, the court should consider the following factors:

> (1) whether the administrative body is vested with discretion based upon investigation and consideration of evidentiary facts, (2) whether it is entitled to hold hearings and decide the issue by the application of rules of law to the ascertained facts and, more importantly, [and] (3) whether its power affects the personal or property rights of private persons.

Tiedemann, 83 Cal. App. 3d at 925 (quoting Ascherman v. Natanson, 23 Cal. App. 3d 861, 865 (Ct. App. 1972)).

Here, Plaintiff alleges that USC, Katsufrakis, and Ball published false statements about him "in all administrative proceedings leading up to Plaintiff's dismissal recommendation" and "published a written letter stating that Plaintiff demonstrated behavior inconsistent with the essential characteristics of a medical student and sufficiently egregious to be worthy of dismissal." (SAC ¶ 75.) These

allegations refer to the SPC hearings regarding Plaintiff's suspension and ultimate dismissal. These proceedings are "quasi-judicial proceedings" because (1) they were vested with discretion to investigate Plaintiff (2) to determine whether to suspend and dismiss him, and (3) its decision affected Plaintiff's rights because he was ultimately dismissed. (SAC ¶¶ 31-33, 40-41.)

In addition, though USC's SPC administrative hearings are nongovernmental proceedings, the privilege applies to nongovernmental proceedings reviewable by mandate. Olaes v. Nationwide Mut. Ins. Co., 135 Cal. App. 4th 1501, 1507 (Ct. App. 2006). Here, absent charges of discrimination, USC's administrative hearings are generally subject to administrative mandamus pursuant to Cal. Civ. Proc. Code § 1094.5. See Gupta, 124 Cal. App. 4th at 411; Pomona Coll., 45 Cal. App. 4th at 1721-24. Thus, because USC's SPC hearings are reviewable by mandate, the absolute privilege of section 47(b) applies to Defendants' statements made in connection to these hearings. Thus, the Court **GRANTS WITHOUT LEAVE TO AMEND** Defendants' motion for the defamation cause of action.

### 7. NINTH CAUSE OF ACTION - *BIVENS* CLAIM AGAINST BAUGHMAN

Finally, Plaintiff alleges a cause of action arising out of Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 396-97 (1971), against Defendant Baughman in his role as a director of the National Institutes of Health. In Bivens, the U.S. Supreme Court held that, in appropriate cases, federal government officials may be held personally liable for violations, committed under the color of government authority, of citizens' constitutional rights. Bivens gives an individual a federal common law basis to sue federal government actors if they violate the individual's constitutional rights. Adams v. Johnson, 355 F.3d 1179, 1183 (9th Cir. 2004). However, the right to bring a Bivens claim is qualified, not absolute. Id. "Bivens remedies are not available to compensate plaintiffs for all constitutional torts committed by federal officials." W. Ctr. for Journalism v. Cederquist, 235 F.3d 1153, 1156 (9th Cir. 2000) (per curiam).

In order to hold a defendant liable under Bivens, a plaintiff must show a violation of his constitutional rights by agents acting under the color of federal law. Morgan v. United States, 323 F.3d 776, 780 (9th Cir. 2003). Bivens causes of action have been limited to First Amendment, Fourth Amendment, Fifth Amendment Due Process, and Eighth Amendment claims, and the Supreme Court has cautioned against extending Bivens into new areas or recognizing new rights or claims. Schweiker v. Chilicky, 487 U.S. 412, 421-23 (1988); Libas Ltd. v. Carillo, 329 F.3d 1128, 1130 (9th Cir. 2003); see also Hartman v. Moore, 126 S. Ct. 1695, 1701 (2006).

Here, Plaintiff alleges Bivens violations of his First and Fifth Amendment rights and the Rehabilitation Act. First, he alleges that Defendant Baughman, in his "federal directorship position at the NIH," "sought to influence the outcome of a disciplinary matter involving his daughter and Plaintiff" by "effectively lobb[ying] and pressur[ing] USC to retaliate against Plaintiff for making formal and informal legal complaints." (SAC ¶ 79.) Because First Amendment retaliatory claims are recognized Bivens claims, see Hartman, 126 S. Ct. at 1701; W. Ctr. for Journalism v. Cederquist, 235 F.3d 1153, 1159 (9th Cir. 2000), and because the Court must assume the facts alleged to be true for purposes of this motion, the Court concludes that Plaintiff has stated a Bivens cause of action on this ground here.

However, as to the Fifth Amendment right to due process (see SAC ¶ 79), Baughman's claim fails because he does not have a property interest in a private university education. Though the Supreme Court has recognized a property interest in public education under state law, Goss v. Lopez, 419 U.S. 565, 573 (1975), no case has held that a student has a property interest in a private university education, which USC provides. Plaintiff attempts to create a property interest by stating that Keck is a "medical school that receives a large part of its operating budget from the government" and thus is a "public good and the enrollment of qualified students is a right protected by the Constitution." (Opp. at 21.) However, Plaintiff fails to provide any case authority to support this assertion. Thus, Plaintiff does not allege a property

interest that is protected by the Due Process Clause of the Fifth Amendment, and his Bivens claim on this ground fails.

In addition, Plaintiff argues that Defendant Baughman has violated Section 504 of the Rehabilitation Act, which "prohibits the use of federal funds to discriminate or retaliate on the basis of a disability." (SAC ¶ 81.) However, he does not plead that the alleged violations of the Rehabilitation Act are violations under the Fifth and Fourteenth Amendments. Thus, Plaintiff cannot maintain a Bivens action against Baughman on this ground either.

Finally, Defendants argue that Baughman is entitled to qualified immunity against Plaintiff's Bivens claim. However, because Plaintiff has alleged that Baughman has violated his First Amendment rights, and such a right is clearly established, Baughman is not entitled to qualified immunity on this ground.

In sum, Plaintiff has sufficiently alleged a Bivens claim for First Amendment retaliation, but fails to state a Bivens claim for alleged violations of the Fifth Amendment's Due Process Clause and the Rehabilitation Act. Thus, the Court **DISMISSES WITH PREJUDICE** Plaintiff's Bivens claims with reference to the Fifth Amendment Due Process Clause and the Rehabilitation Act. However, the Court **DENIES** Defendants' motion to dismiss the First Amendment retaliation Bivens cause of action.

## IV.
## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion as follows:

1) **DENY** as to the First Cause of Action for retaliation under the Rehabilitation Act against USC;

2) **GRANT WITHOUT LEAVE TO AMEND** as to the Fourth Cause of Action for retaliation under the ADA as to Henderson, Katsufrakis, Ball, and Baughman;

3) **DENY** as to the Fourth Cause of Action for retaliation under the ADA as to USC;

4) **GRANT WITHOUT LEAVE TO AMEND** as to the Fifth Cause of Action for negligent infliction of emotional distress as to USC, Henderson, Katsufrakis, and Ball;

5) **DENY** as to the Sixth Cause of Action for breach of contract against USC;

6) **DENY** as to the Seventh Cause of Action for intentional interference with contract against all individual Defendants;

7) **GRANT WITHOUT LEAVE TO AMEND** as to the Eighth Cause of Action for defamation against USC, Katsufrakis, and Ball;

8) **DENY** as to the Ninth Cause of Action under Bivens for First Amendment retaliation, but **GRANT WITHOUT LEAVE TO AMEND** as to the Fifth Amendment due process and Rehabilitation Act Bivens causes of action.

IT IS SO ORDERED.

DATED: March 1, 2007

Judge Gary Allen Feess
United States District Court