1  DAL SOGLIO & MARTENS LLP
2    Robin D. Dal Soglio (State Bar No. 155334)
   27240 Turnberry Lane, Suite 200
3  Valencia, California 91355
4  Telephone:  (661) 362-0736
   Facsimile:  (661) 244-4942
5  E-mail: rdalsoglio@dm-lawfirm.com

6
   Attorneys for Defendants University of
7  Southern California, Robert Baughman, Brian
   E. Henderson, Peter J. Katsufrakis and James
8  M.H. Ball

9

10             UNITED STATES DISTRICT COURT
11             CENTRAL DISTRICT OF CALIFORNIA

12
   JEFFREY DAVID ISAACS,              CASE NO. CV-06-3338 GAF (Ex)
13
14            Plaintiff,              **DEFENDANT UNIVERSITY OF**
                                      **SOUTHERN CALIFORNIA'S**
15       v.                           **NOTICE OF MOTION AND MOTION**
                                      **FOR SUMMARY JUDGMENT, OR,**
16                                    **IN THE ALTERNATIVE, PARTIAL**
   UNIVERSITY OF SOUTHERN             **SUMMARY JUDGMENT;**
17 CALIFORNIA; ROBERT WILLIAM         **MEMORANDUM OF POINTS AND**
   BAUGHMAN; BRIAN E.                 **AUTHORITIES IN SUPPORT**
18 HENDERSON; PETER J.                **THEREOF**
19 KATSUFRAKIS; and JAMES M.H.
   BALL                              [Filed Concurrently Herewith:
20                                    Statement of Uncontroverted Facts and
21            Defendants.             Conclusions of Law; Declaration of Peter
                                      J. Katsufrakis; Declaration of Amy
22                                    Baughman; Request for Judicial Notice;
23                                    Proposed Judgment]
24
                                      Date:       April 21, 2008
25                                    Time:       9:30 a.m.
26                                    Courtroom:  740 – Roybal
                                                  Hon. Gary A. Feess
27

28

                                            **Defendant's Motion for Summary Judgment**

**TO PLAINTIFF JEFFREY DAVID ISAACS, IN PRO SE:**

      **PLEASE TAKE NOTICE** that on Monday, April 21, 2008, at 9:30 a.m., or as soon thereafter as the matter can be heard, before the Honorable Gary A. Feess in Courtroom 740 of the United States District Court, Central District of California, Roybal Federal Building located at 255 East Temple Street, Los Angeles, California 90012, Defendant University of Southern California ("USC") will, and hereby does, move the Court for an Order pursuant to Federal Rule of Civil Procedure 56(c) for summary judgment, or, in the alternative, partial summary judgment, on the following claims set forth in Plaintiff Jeffrey D. Isaacs ("Plaintiff") Second Amended Complaint ("SAC") in this matter:  First Claim for Retaliation under Section 504 of the Rehabilitation Act of 1973; Second Claim For Discrimination under Section 504 of the Rehabilitation Act of 1973; Third Claim for Discrimination Under Title II of the Americans with Disabilities Act; Fourth Claim for Retaliation Under Title II of the Americans with Disabilities Act; Sixth Claim for Breach of Contract; and Tenth Claim for Injunctive Relief.

      This motion is made pursuant to Fed. R. Civ. P. 56(c) on the grounds that Plaintiff's claims must fail because the undisputed facts show that: (1) after harassing and stalking one of his medical school classmates in violation of a University stay-away order, Plaintiff made violent threats toward the school; and (2) after due consideration (including notice and opportunity to be heard), USC dismissed Plaintiff from its medical program based upon conduct which called into question his ability to meet the core standards required of its medical students, not because of any alleged wrongdoing by Defendant USC.

/ / /

/ / /

/ / /

/ / /

/ / /

Specifically, USC moves for summary judgment as to each remaining claim in Plaintiff's SAC[1] as follows:

    1.   Plaintiff's alleged first claim for retaliation in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Section 504"), fails because Plaintiff cannot show that USC's decision to dismiss him was a pretext for retaliating against him due to an alleged disability.

    2.   Plaintiff's alleged second claim for discrimination in violation of Section 504 fails because Plaintiff cannot show that he was "otherwise qualified" to continue at the medical school or subjected to discrimination solely on the basis of his alleged disability.

    3.   Plaintiff's alleged third claim for discrimination in violation of Title II of the Americans with Disabilities Act ("ADA") fails because Plaintiff cannot show that he was "otherwise qualified" to continue at the medical school or subjected to discrimination on the basis of his alleged disability.

---

[1] As the Court is aware, in a Minute Order dated 3-2-07, this Court granted in part Defendants' Motion pursuant to Fed. R. Civ. P. Rule 12(b)(6) and dismissed with prejudice the following claims in Plaintiff's SAC:  Fourth Claim for Retaliation under Title II of the ADA as against the Individual Defendants; Fifth Claim for Negligent Infliction of Emotional Distress; Eighth Claim for Defamation and Ninth (<u>Bivens</u>) Claim under the Due Process Clause and Section 504 of the Rehabilitation Act.

1    4.    Plaintiff's alleged fourth claim for retaliation in
2         violation of the ADA fails because Plaintiff cannot
3         show that USC's decision to dismiss him was a pretext
4         for retaliating against him due to an alleged disability.
5    5.    Plaintiff's alleged sixth claim for breach of contract fails
6         with his retaliation and discrimination claims, and
7         because Plaintiff has no evidence of any contractual
8         provision breached by USC.
9    6.    Plaintiff's tenth claim for injunctive relief fails on the bases of
10        his other claims as set forth above.
11        This motion is based upon the attached Memorandum of Points and
12   Authorities, the accompanying Separate Statement of Uncontroverted Facts and
13   Conclusions of Law, the Declaration of Peter J. Katsufrakis, Defendant's Request
14   for Judicial Notice, oral argument of counsel, and other evidence of which the
15   Court may properly take judicial notice at the time of the hearing on this motion.
16        Pursuant to Local Rule 16-12, this case is exempt from the meet and
17   confer requirement of Local Rule 7-3, on the grounds that Plaintiff is appearing
18   *pro se* and is not an attorney.
19   Dated:    March 28, 2008        Respectfully submitted,
20                                 DAL SOGLIO & MARTENS LLP
21
22                                 By: Robin D. Dal Soglio
23                                 Robin D. Dal Soglio
                                   Attorneys for Defendants University of
24                                 Southern California, Robert Baughman, Brian
                                   E. Henderson, Peter Katsufrakis and James
25                                 M.H. Ball
26
27
28

3    **Defendant's Motion for Summary Judgment**

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES.............................................1

I.    INTRODUCTION......................................................................................1

II.   STATEMENT OF UNCONTROVERTED FACTS ....................................4

III.  STANDARD OF REVIEW ON MOTIONS FOR SUMMARY
      JUDGMENT..............................................................................................10

IV.   PLAINTIFF'S FIRST AND FOURTH CLAIMS FOR
      RETALIATION  UNDER SECTION 504 AND THE ADA
      FAIL AS A MATTER OF LAW ................................................................11

      A.    Plaintiff Cannot Show that USC's Legitimate Non-
            Retaliatory Reasons to Dismiss Him were Pretextual. ......................11

      B.    USC's Decision Must Be Evaluated Against a
            Background of Escalating Nationwide School Violence...................12

V.    PLAINTIFF'S SECOND AND THIRD CLAIMS FOR
      DISCRIMINATION UNDER SECTION 504 AND THE ADA
      MUST BE DISMISSED.............................................................................14

      A.    Plaintiff Does Not and Cannot Establish a *Prima Facie*
            Case of Disability Discrimination.......................................................14

            1.    Plaintiff Is Not an "Otherwise Qualified" Disabled
                  Individual..................................................................................14

            2.    USC's Decisions Must Be Accorded Deference.....................15

      B.    Plaintiff Does Not and Cannot Show that USC Expelled
            Him *Solely* on the Basis of his Alleged Disability.............................17

VI.   SUMMARY JUDGMENT SHOULD BE GRANTED AS TO
      PLAINTIFF'S SIXTH CLAIM FOR BREACH OF
      CONTRACT...............................................................................................18

VII.  SUMMARY JUDGMENT SHOULD BE GRANTED ON
      PLAINTIFF'S TENTH CLAIM FOR INJUNCTIVE RELIEF .................19

VIII. CONCLUSION ..........................................................................................20

1

## CASES

Alex G. v. Bd. of Trustees of Davis Joint Unified Sch. Dist.,
   387 F. Supp. 2d 1119 (E.D. Cal. 2005) ........................................................ 11, 12

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) .................................. 10

Bragdon v. Abbott,
   524 U.S. 624, 118 S. Ct. 2196, 141 L. Ed 2d 540 (1998) ................................ 11

Brittain v. Hansen,
   451 F.3d 982 (9th Cir. 2006) ........................................................................... 16

Careau & Co. v. Security Pacific Business Credit, Inc.,
   222 Cal. App. 3d 1371, 272 Cal. Rptr. 387 (1990) ......................................... 18

Celotex Corp. v. Catrett,
   477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265  (1986) ................................ 10

Cohn v. New Paltz Central Sch. Dist.,
   363 F. Supp. 2d 421 (N.D.N.Y. 2005) ............................................................ 16

Doe v. Mercer Island Sch. Dist. No. 400,
   2007 U.S. Dist. LEXIS 5890 (W.D. Wash. Jan. 26, 2007) .............................. 16

Doe v. New York Univ.,
   666 F.2d 761 (2nd Cir. 1981) ........................................................................... 15

Godwin v. Hunt Wesson, Inc.,
   150 F.3d 1217 (9th Cir. 1998) .......................................................................... 12

Kaltenberger v. Ohio College of Podiatric Med.,
   162 F.3d 432 (6th Cir. 1998) ........................................................................... 15

Keyser v. Sacramento City Unified Sch. Dist.,
   265 F.3d 741 (9th Cir. 2001) ........................................................................... 12

LaVine v. Blaine Sch. Dist.,
   257 F. 3d 981 (9th Cir. 2001) ............................................................... 13, 16, 17

Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,
   475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538  (1986) ................................ 10

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Tarasoff v. Regents of the University of California,*
  17 Cal. 3d 425, 131 Cal. Rptr. 14 (1976) .............................................................9

*Villiarimo v. Aloha Island Air, Inc.,*
  281 F.3d 1054 (9th Cir. 2002) .........................................................................12

*Weixel v. Bd. of Educ.,*
  287 F.3d 138 (2d Cir. 2002) ..........................................................................11

*Wong v. Regents of the Univ. of Cal.,*
  192 F.3d 807 (9th Cir. 1999) ..........................................................................14

*Zukle v. Regents of the Univ. of Cal.,*
  166 F.3d 1041, 1045 n. 11 (9th Cir. 1999)............................................11, 14, 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## STATUTES

Fed. R. Civ. P. 56(c) ................................................................... 9

Local Rule 16-12 ....................................................... Notice 3

Rehabilitation Act Section 504 ..................................................... *passim*

Americans with Disabilities Act ..................................................... *passim*

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Plaintiff Jeffrey Isaacs ("Plaintiff") is a former medical student who was enrolled at Defendant University of Southern California's ("USC" or the "University") Keck School of Medicine during the 2005-2006 school year. He was dismissed from the University in June 2006 after months of harassing and stalking a fellow medical student, Amy Baughman, refusing to comply with a University Stay Away Order mandating that he cease communications with Ms. Baughman, and finally making violent threats that "they're afraid I'll come in with a gun" and "You have no idea how dangerous I'll become." Following a suspension and hearing (of which Plaintiff was given notice and an opportunity to be heard, and with counsel present at the dismissal inquiry), Plaintiff was expelled from USC's medical program for behavior that was not consistent with the essential characteristics and abilities required for completion of the M.D. Degree at the Keck School of Medicine, most notably lacking "sufficient mental stability to provide reasonable assurance that candidates can complete the entire course of study and participate fully in all aspects of medical training."

One week prior to his dismissal hearing, Plaintiff filed this lawsuit against USC and various administrators, one of its attorneys, and the father of Ms. Baughman, claiming, *inter alia*, that he was retaliated and discriminated against on the basis of a psychiatric disability. [2] After motions to dismiss by Defendants and the filing of two amended pleadings, the following claims remain against

---

[2] In addition to asserting claims against USC, Plaintiff originally brought claims against various individual defendants (collectively, defendants Baughman, Henderson, Katsufrakis and Ball). However, the parties entered into a settlement and stipulation for voluntary dismissal with respect to the Individual Defendants and the Individual Defendants were dismissed with prejudice on September 6, 2007.

**Defendant's Motion For Summary Judgment**

1    Defendant USC in Plaintiff's Second Amended Complaint ("SAC"):

2    (1) retaliation in violation of Section 504 of the Rehabilitation Act ("Section 504");

3    (2) discrimination in violation of Section 504; (3) discrimination in violation of

4    Title II of the Americans with Disabilities Act ("ADA"); (4) retaliation in violation

5    of the ADA[3]; (6) breach of contract; and (10) injunctive relief.

6    　　　　As an initial matter, it is important to note that the Ninth Circuit and

7    other courts have recognized that claims such as those brought by Plaintiff must be

8    assessed against the backdrop of school violence our nation has faced all too

9    frequently in recent years.  Tragic shootings such as those at Columbine High

10   School and other secondary schools and colleges across the country have

11   compelled school administrators to take action to protect the safety of their

12   students and faculty.  Plaintiff was suspended in February 2006 after persistently

13   harassing Ms. Baughman – even after he received a University stay away order –

14   with repeated telephone, text and email messages, including emails professing his

15   love for her, demanding that she agree to meet with him "on [his] terms," and

16   another ominously stating "There is little I would not do to be on better terms with

17   you."

18   　　　　In March 2006, Plaintiff was admitted for inpatient psychiatric care at

19   UCLA, during which period University officials received notice from Plaintiff's

20   psychiatrist pursuant to Tarasoff v. Regents of the University of California, 17 Cal.

21   3d 425, 131 Cal. Rptr. 14 (1976) of Plaintiff's violent statements that that USC

22   _____

23   [3] Although Plaintiff captions his action as arising under Title II of the ADA, the anti-
     retaliation provision is actually found in Title IV of the ADA.  The ADA is divided
24   into four subchapters.  Subchapter I prohibits discrimination on the basis of disability
     in employment (42 U.S.C. §12111-12117), Subchapter II prohibits discrimination in
25   the provision of public services (42 U.S.C. §12131-12165), and Subchapter III
     prohibits discrimination by places of public accommodation (42 U.S.C. §12181-
26   12189).  Subchapter IV sets out miscellaneous provisions (see 42 U.S.C. §12201-
     12213), including the anti-retaliation provision at issue here (42 U.S.C. §12203).
27

28

2    __Defendant's Motion for Summary Judgment__

1  would not dismiss him "because they're afraid I'll come in with a gun," and "You

2  have no idea how dangerous I'll become." USC had no choice but to take swift

3  and appropriate measures to secure the safety of its campus. Its decision to dismiss

4  Plaintiff must be evaluated in the context of these events.

5        Indeed, with respect to Plaintiff's first and fourth claims for retaliation

6  in violation of Section 504 and the ADA, he must show that (1) he engaged in a

7  protected activity; (2) of which USC was aware; (3) an adverse action was taken

8  against him; and (4) a causal connection exists between the two. Even if Plaintiff

9  could establish the requisite causal connection between his alleged psychiatric

10  disability and USC's decision to dismiss him, the burden would shift to the

11  University to demonstrate the legitimate non-retaliatory purpose for its acts,

12  namely the protection of its students and faculty. Unless Plaintiff can show that

13  USC's concerns about campus safety were a mere *pretext* to retaliate against him

14  for having a disability, these claims cannot withstand summary judgment and must

15  be dismissed.

16        Plaintiff's second and third claims of discrimination under these acts

17  are similarly deficient. Unless he can show that he was otherwise qualified and

18  met the essential eligibility requirements to remain in the USC medical program,

19  and that his discharge from the program was made *solely* on the basis of his alleged

20  disability, these claims must fail. Taking into account the escalating incidents of

21  school violence nationwide and the appropriate deference to be accorded to the

22  decisions of educational institutions in the context of ADA and Section 504 claims,

23  the University's legitimate non-discriminatory reasons for its actions -- including

24  its academic determination that Plaintiff could not meet the core standards for

25  completion of a USC medical degree -- must be upheld.

26        Plaintiff's alleged sixth claim for breach of contract also fails. As this

27  Court held in ruling on Defendants' Motions to Dismiss, Plaintiff's contractual

28  claims are intertwined with his claims for disability discrimination, which fail as a

matter of law.  In addition, he has no facts to establish that the University breached any contractual obligation.  USC followed standard procedures and adhered to its documented policies in reaching its decision to expel Plaintiff from the medical school.  Plaintiff was given notice of all disciplinary proceedings and an opportunity to be heard; indeed, he was represented by counsel at his dismissal hearing and throughout his subsequent appeal of the resulting decision.

Plaintiff's tenth claim for injunctive relief against USC falls with his other claims and summary judgment should be granted on this claim as well. Accordingly, Defendants should be granted summary judgment on all of the remaining claims in Plaintiff's SAC, and this action should be dismissed.

## II.

## STATEMENT OF UNCONTROVERTED FACTS

The gravamen of Plaintiff's lawsuit is that he alleges he was not reasonably accommodated for his psychiatric illness, was harassed and subjected to discrimination based on that illness, and retaliated against when he was placed on a disciplinary suspension and later dismissed from USC's Keck School of Medicine.

Plaintiff began medical studies at USC in August 2005. (Uncontroverted Fact ("U.F.") No. 1.)  Approximately halfway through Plaintiff's first semester at school, Plaintiff alleges that other students, including Amy Baughman, began harassing him.  (U.F. No. 2.)  Plaintiff maintains that he "explained to Ms. Baughman that he suffered from a certain psychiatric condition that she exacerbated."  (U.F. No. 3.)  On November 18, 2005, following an interaction in which Ms. Baughman made what Plaintiff viewed as an "unfeasible" request to stay away from her, Plaintiff proceeded to send over 60 text messages to Ms. Baughman between 3:00 p.m. and midnight, including one message discussing Ms. Baughman's alleged STD infection, a message chastising Ms. Baughman and her friends for their supposed drug use, and another message sarcastically quoting Ms. Baughman.  (U.F. No. 4.)

On November 21, 2005, Ms. Baughman complained to Peter Katsufrakis, the medical school's Associate Dean of Students, about Plaintiff's disturbing repeated phone calls, email messages and "30-60 text messages including one that said 'wanna f**k.'" (U.F. No. 5.) She informed Katsufrakis that Plaintiff's "behavior in recent days has been inappropriate towards me and has made me very, very uncomfortable." (U.F. No. 5.)

Defendant Katsufrakis met with Plaintiff and Ms. Baughman on November 23, 2005. (U.F. No. 6.) Defendant Katsufrakis asked Plaintiff to voluntarily accept a school stay-away order between him and Ms. Baughman, but Plaintiff refused. (U.F. No. 7.) Defendant Katsufrakis continued to monitor the situation, meeting with Plaintiff on November 30, 2005 and suggesting that he consider counseling. (U.F. No. 8.) Plaintiff left a message for Ms. Baughman on December 2, 2005 wishing to talk with her. (U.F. No. 9.) Ms. Baughman immediately emailed Katsufrakis, informing him that she did not want "any more involvement" with Plaintiff. (U.F. No. 10.) Later that same day, she emailed Katsufrakis again stating that she had received a third voicemail from Plaintiff that day and telling Katsufrakis "I don't think he understands how intensely I want him to leave me alone." (U.F. No. 11.)

Ms. Baughman sent an email to Plaintiff on December 4, 2005 explaining that she was "so reluctant" to have any communication with him because, as she explained to him:

> You sent me over 50 messages and nonstop called me for several hours. You feel you have a justified explanation for this. But in my mind, there is no justification for such behavior. It scared and upset me.

(U.F. No. 12.) In the email, she informed Plaintiff that "distance would be a good way to let things simmer and move on asap until January" and that she needed to focus on studying for exams. (U.F. No. 12.)

On December 6, 2005, Katsufrakis spoke again with Plaintiff, who was upset by a classmate he believed was laughing about his conflict with Ms. Baughman.  At that time, Katsufrakis reiterated his recommendation for Plaintiff to receive counseling.  (U.F. No. 13.)

As the semester was coming to an end, Ms. Baughman continued to make clear to Plaintiff that she wanted him to stay *completely* away from her.  On December 16, 2005, Ms. Baughman sent Plaintiff an email stating in no uncertain terms that:

> I told you before Thanksgiving that I wanted no contact
> from you.  I told you first in person outside the library, in
> a text message later that afternoon, and then through Dr.
> K., and that [sic] again, at our meeting with Dr. K. . . . I
> will spell it out here.  I do not want to receive any more
> mail, phone or text contact from you.  I do not want any
> further 'explanations' from you. . . . I need you to leave
> me alone.

(U.F. No. 14.)

Rather than leave Ms. Baughman alone, however, Plaintiff's emails to Ms. Baughman became more persistent.  Despite her December 16 email, Plaintiff contacted Ms. Baughman on several occasions during their winter break from USC.  He sent lengthy messages on December 24 and 28, 2005 and one on December 30, 2005 stating "it really hurts that you didn't respond at all over break," and, ominously:  "There is little I would not do to be on better terms with you."  (U.F. No. 15.)  Upon his return to Los Angeles, Plaintiff sent another email on January 5, 2006 asking Ms. Baughman to meet with him because it is "continually painful" to be "sitting in a room with someone who said they want nothing to do with me."  (U.F. No. 16.)

/ / /

6        **Defendant's Motion for Summary Judgment**

Plaintiff emailed Ms. Baughman the next day to criticize her for forwarding his email to another classmate, and then sent multiple messages to her the following day, January 7, 2006. (U.F. No. 17.) One of these emails asked if she wanted him to drop out of school, which he said was "a pretty steep price to pay for being attracted to you," and another stated that he was having "nightmares about you. I am seriously considering dropping out, waiting for exam results but the bigger issue is you. I can't be around you for four years like this. I'm not one to beg, Amy, but in this case I am pleading with you to have a discussin [sic] with me or me and a friend." (U.F. No. 18.) Also on January 7, 2006, Ms. Baughman received an email from the University Online Facebook informing her that Plaintiff was requesting to add her as a friend to his online Facebook. (U.F. No. 19.)

In an email sent on January 8, 2006, Plaintiff wrote to Ms. Baughman suggesting "a walk on the beach or something" and expressing his desire to talk with her "in private" and "on my terms." (U.F. No. 20.)

Based on Mr. Isaacs refusal to stop contacting and harassing her, Ms. Baughman made the decision to seek a University restraining order against Plaintiff. (U.F. No. 21.) On Sunday, January 8, 2006, Ms. Baughman wrote Dr. Katsufrakis an e-mail informing him that she felt like Plaintiff was "stalking" her and that she would be filing for the restraining order the next day, Monday, January 9, 2006. (U.F. No. 22.) The next morning, at 7:46 a.m. and 10:04 a.m., Dr. Katsufrakis responded to Ms. Baughman's email, approving of her plan and directing her to obtain the "Stay Away Letter" through the University's Center for Women and Men. (U.F. No. 23.) That same day, January 9, 2006, Ms. Baughman made a report to the Center for Women and Men and requested that they issue a Stay Away Letter to Plaintiff. (U.F. No. 24.)

Later that afternoon, after Plaintiff had already filed for the Stay Away Order, Plaintiff sent Ms. Baughman an email, angrily asking Ms. Baughman if she was going to reply to him or just keep forwarding his e-mails to others.

1   (U.F. No. 25.)  Then, at 1:59 p.m., Plaintiff sent Ms. Baughman another email
2   announcing that he did not attend class that day because he was preparing a lawsuit
3   against her, which he would serve on her and her father if she did not agree to meet
4   with him during the following week.  (U.F. No. 26.)  Ms. Baughman was
5   extremely frightened by these events, and her father sent a message to defendant
6   Katsufrakis stating his intention to fly to Los Angeles to see her and discuss what
7   should be done.  (U.F. No. 27.)   On January 10, 2006, USC served Plaintiff with
8   the Stay-Away Order.  (U.F. No. 28.)

9        Plaintiff did not, however, stay away from Amy Baughman.  To the
10  contrary, after failing a hematology exam, Plaintiff sent bizarre, rambling emails to
11  Ms. Baughman on February 17 and 19, 2006 apologizing for "my inappropriate
12  actions" and stating that "I honestly believe I fell in love with you" and that "I did
13  it because of the strongest feelings for you."  (U.F. No. 29.)

14       A disciplinary hearing concerning Plaintiff was held on February 27,
15  2006 before the Student Performance Committee ("SPC").  (U.F. No. 30.)  Plaintiff
16  appeared at the hearing and did not contest most of the allegations against him,
17  including that he violated the Stay Away Order in contacting Baughman.  (U.F.
18  No. 31.)

19       On February 28, 2006, Plaintiff rushed into Ms. Baughman's lab to
20  tell her that he was being expelled.  He accused her of creating a conspiracy to get
21  him suspended.  He said that she was ruining his life.  He acted crazy and he scared
22  Ms. Baughman.  At that point, Ms. Baughman became gravely concerned about
23  her own safety.  She documented this situation and her concerns in an e-mail to Dr.
24  Katsufrakis and other University administrators.  (U.F. No. 32.)

25       On March 1, 1006, Katsufrakis sent a letter to Plaintiff notifying him
26  that the SPC had voted to suspend him and that he would be considered for
27  dismissal at an upcoming SPC meeting in accordance with the rules set forth in the
28  Student Handbook.  (U.F. No. 33.)

1    Plaintiff then checked himself into the UCLA Emergency Room
2  where he was hospitalized at the neuro-psychiatric hospital for approximately one
3  month. (U.F. No. 34.)  On March 17, 2006, University officials received a notice
4  from Plaintiff's treating physician at UCLA pursuant to <u>Tarasoff v. Regents of the</u>
5  <u>University of California</u>, 17 Cal. 3d 425, 131 Cal. Rptr. 14 (1976) that Plaintiff
6  had made the following violent statements:  "I don't think they'll dismiss me
7  because they're afraid I'll come in with a gun," and "You have no idea how
8  dangerous I'll become."  (U.F. No. 35.)

9    Following his release from UCLA, Plaintiff began treatment with
10 another doctor, who sent a letter to USC requesting "retroactive leave of absence,
11 in lieu of the discriminatory suspension" and suggesting "that USC offer support
12 and counseling services to Plaintiff," rather than punishing him.  (U.F. No. 36.)
13 USC denied the request for retroactive medical leave and, on June 7, 2006, a
14 dismissal hearing was held pursuant to the University's policy on Academic
15 Probation and Dismissal.  (U.F. No. 37.)  Significantly, at this hearing, Plaintiff
16 was represented by an attorney, who submitted a written statement and also
17 presented witness testimony on Plaintiff's behalf.  (U.F. No. 38.)

18   On June 8, 2006, Plaintiff was notified that the SPC voted to dismiss
19 him from the medical school for behavior that was not consistent with the essential
20 characteristics and abilities required for completion of the M.D. degree at the Keck
21 School of Medicine.  (U.F. No. 39.)  These stated essential characteristics and
22 abilities include "sufficient mental stability to provide reasonable assurance that
23 candidates can complete the entire course of study and participate fully in all
24 aspects of medical training."  (U.F. No. 40.)  Plaintiff, though his attorney,
25 appealed the SPC decision expelling him, which was reviewed – and upheld – in
26 accordance with University procedures by an *ad hoc* committee of faculty
27 members who had no prior involvement in the dismissal decision.  (U.F. No. 41.)
28 ///

## III.

## STANDARD OF REVIEW ON MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) . The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only point out to the court that there is an absence of evidence to support the non-moving party's case. *See* id. at 325.

The burden then shifts to the non-moving party to "designate specific facts showing that there is a genuine issue for trial." Id. at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) . "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) .

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV.

## <u>PLAINTIFF'S FIRST AND FOURTH CLAIMS FOR RETALIATION</u>
## <u>UNDER SECTION 504 AND THE ADA FAIL AS A MATTER OF LAW</u>

**A.    <u>Plaintiff Cannot Show that USC's Legitimate Non-Retaliatory Reasons</u>**
**<u>to Dismiss Him were Pretextual.</u>**

Plaintiff alleges that Defendant USC retaliated against him for engaging in a protected activity.  In order to establish a *prima facie* case against USC for retaliation under Section 504 or the ADA,[4] Plaintiff must show that (1) he engaged in a protected activity; (2) USC knew he was involved in the protected activity; (3) an adverse action was taken against him; and (4) a causal connection exists between the protected activity and the adverse action.  *See, e.g.,* <u>Alex G. ex rel. Dr. Steven G. v. Bd. of Trustees of Davis Joint Unified Sch. Dist.</u>, 387 F. Supp. 2d 1119, 1128 (E.D. Cal. 2005) (*citing* <u>Weixel v. Bd. of Educ.</u>, 287 F.3d 138, 148 (2d Cir. 2002)).

In ruling on Defendants' Motion to Dismiss, the Court suggested that Plaintiff had alleged protected activities by informing USC of a Post Traumatic Stress Disorder ("PTSD") condition, requesting a retroactive medical leave of absence and filing this lawsuit alleging disability discrimination.  (3/2/07 Minute Order at 7.)  Plaintiff has no evidence whatsoever of any causal connection between these activities and his ultimate dismissal from the medical school.  Even assuming *arguendo* that Plaintiff could establish such a connection, his claims still fail because he has no evidence of pretext.

---

[4] Courts have applied the same analysis to claims brought under both statutes. *See* <u>Zukle v. Regents of the Univ. of Cal.</u>,166 F.3d 1041, 1045 n. 11 (9th Cir. 1999)  ("There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act"); <u>Bragdon v. Abbott</u>, 524 U.S. 624, 118 S. Ct. 2196, 2202, 141 L. Ed 2d 540 (1998)  (courts are required to "construe the ADA to grant at least as much protection as provided by the regulations implementing the Rehabilitation Act").

1    In <u>Alex G.</u>, the United States District Court for the Eastern District of
2  California granted summary judgment to the defendant school district on an
3  elementary student's retaliation and discrimination claims under Section 504.  <u>Id</u>.
4  at 1121.  In considering the Section 504 retaliation claim, the court explained that
5  if the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to
6  show a legitimate, non-retaliatory purpose for its acts.  <u>Id</u>. at 1128.  Upon this
7  showing, the burden shifts back to the plaintiff to "show that the articulated reason
8  is pretextual either by directly persuading the court that a discriminatory reason
9  more likely motivated the [school district] or indirectly by showing that the [school
10 district's] proffered explanation is unworthy of credence."  <u>Id</u>. (*quoting* <u>Villiarimo</u>
11 <u>v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1062 (9th Cir. 2002) .)  If the plaintiff is
12 relying solely on indirect or circumstantial evidence of pretext, then the evidence
13 must be "specific" and "substantial" to survive summary judgment.  <u>Id</u>. (*citing*
14 <u>Godwin v. Hunt Wesson, Inc.</u>, 150 F.3d 1217, 1221 (9th Cir. 1998) ); *see also*
15 <u>Keyser v. Sacramento City Unified Sch. Dist.</u>, 265 F.3d 741, 753 n.5 (9th Cir.
16 2001) ("Mere opinions and beliefs that [defendant's] actions were retaliatory,
17 based on no specific or substantial evidence, are not enough to create a genuine
18 issue of material fact on the issue of pretext.").

**B.    USC's Decision Must Be Evaluated Against a Background of Escalating Nationwide School Violence.**

21    Granting summary judgment for the defendants, the <u>Alex G</u>. court
22 held that the plaintiffs' evidence fell far short of the "specific" and "substantial"
23 showing of pretext, and observed that the evidence supported the defendants'
24 contentions that "their actions, rather than being retaliatory, were motivated by a
25 desire to protect Alex, the other students and the staff from Alex's dangerous
26 behavior."  <u>Id</u>. at 1129.  As in <u>Alex G.</u>, the actions taken in this case by USC
27 administrators were taken in order to protect the well being of students and faculty.
28 ///

1    As the Ninth Circuit expressly recognized in <u>LaVine v. Blaine Sch.</u>
2  <u>Dist.</u>, 257 F. 3d 981, 987 (9th Cir. 2001) , an action upholding summary judgment
3  on a high school student's challenge to his emergency expulsion based upon a
4  violent poem he had written and shown to his English teacher:

5    [W]e live in a time when school violence is an
6    unfortunate reality that educators must confront on an all
7    too frequent basis.  The recent spate of school shootings
8    have put our nation on edge and have focused attention
9    on what school officials, law enforcement and others can
10    do or could have done to prevent these kinds of tragedies.
11    After Columbine, Thurston, Santee and other school
12    shootings, questions have been asked about how teachers
13    or administrators could have missed telltale 'warning
14    signs,' why something was not done earlier and what
15    should be done to prevent such tragedies from happening
16    again.

17  <u>See id</u>. at 983 ("This case . . . arises against a backdrop of tragic school shootings,
18  occurring both before and after the events at issue here, and requires us to evaluate
19  through a constitutional prism the actions school officials took to address what
20  they perceived was the student's implied threat of violent harm to himself and
21  others.")

22    Here, the University's actions must be evaluated in this same light.
23  Incidents of school violence have further escalated since the Ninth Circuit's
24  decision in <u>LaVine</u> – indeed, even further since Plaintiff's dismissal in 2006
25  (<i>see</i> Defendants' Request for Judicial Notice) – only confirming the necessity for
26  prompt and effective action when threats are made in an educational setting.
27  / / /
28  / / /

In this case, Plaintiff had been sending continuous and excessive unwanted emails and text messages to Ms. Baughman, and he continued to do so even after being served with a University Stay Away Order. These communications swung back and forth between professions of love and outrage, and eventually caused Ms. Baughman to fear for her safety. After being suspended and ordered to undergo a psychiatric evaluation, Plaintiff entered made veiled threats against the University. These facts are sufficient, as a matter of law, to support USC's legitimate non-retaliatory decision to expel Plaintiff.

In order to survive summary judgment, Plaintiff would have to come forward with specific evidence which establishes that the University's genuine concerns for campus safety were a mere pretext to retaliate against him due to his alleged psychiatric condition, his request for a retroactive medical leave of absence or his filing of this lawsuit. In the day and age in which we currently live, this he has not done and cannot do. As such, summary judgment should be granted on Plaintiff's first and fourth claims.

**V.**

**PLAINTIFF'S SECOND AND THIRD CLAIMS FOR DISCRIMINATION UNDER SECTION 504 AND THE ADA MUST BE DISMISSED**

**A.    Plaintiff Does Not and Cannot Establish a *Prima Facie* Case of Disability Discrimination.**

      **1.    Plaintiff Is Not an "Otherwise Qualified" Disabled Individual**

To establish a *prima facie* case of discrimination under Section 504 or the ADA, Plaintiff must show that: (1) he is disabled; (2) he is "otherwise qualified" to remain a student at the medical school; (3) he was dismissed solely because of his disability; and (4) the medical school receives federal financial assistance (Section 504 claim) or is a public entity (ADA claim). *See* Wong v. Regents of the Univ. of Cal., 192 F.3d 807, 816 (9th Cir. 1999) ; Zukle v. Regents of the Univ. of Cal., *supra*, 166 F.3d at 1045. The Ninth Circuit in Zukle affirmed

1  summary judgment in favor of a defendant medical school that dismissed a

2  learning disabled student for failure to meet the school's academic standards.  Id.

3  at 1051 (holding plaintiff failed to demonstrate that she was "otherwise qualified"

4  and could meet the essential eligibility requirements of the medical school).

5           In Zukle, the court applied the shifting burden approach to require the

6  plaintiff to produce evidence of the existence of a reasonable accommodation that

7  would enable her to meet the school's essential eligibility requirements.  The court

8  determined that Zukle was not an "otherwise qualified" individual with a disability

9  and denied her request to proceed with her medical schooling on a decelerated

10  schedule due to her reading disability.  Id. at 1047.  Although it had granted

11  accommodation requests for decelerated schedules in the past – including for Zukle

12  herself – the court noted that it "must evaluate Zukle's requests in light of the

13  totality of her circumstances."  Id. at 1048 (citations omitted) .

14  **2.    USC's Decisions Must Be Accorded Deference**

15           Prior to evaluating the merits of the plaintiff's claims, the Zukle court

16  considered an issue of first impression in the Ninth Circuit, holding that academic

17  decisions made by the school in the context of an ADA or Section 504 claim must

18  be accorded deference:  "[W]e will extend judicial deference 'to the evaluation

19  made by the institution itself, absent proof that its standards and its application of

20  them *serve no purpose other than to deny an education to handicapped persons.*'"

21  Id. at 1047-48 (*quoting* Doe v. New York Univ., 666 F.2d 761, 776 (2nd Cir. 1981)

22  (emphasis supplied).)   Indeed, Courts have been particularly reluctant to second-

23  guess academic decisions regarding the program and standards applicable to

24  medical students, since "the conferral of a degree places the school's imprimatur

25  upon the individual as someone qualified to pursue a physician's license.

26  Kaltenberger v. Ohio College of Podiatric Med., 162 F.3d 432, 437 (6th Cir. 1998).

27  / / /

28  / / /

1    This deference is particularly warranted for decisions involving school
2  safety.  Indeed, even where a fundamental right is implicated, the court reviews
3  "with deference, schools' decision in connection with safety of their students."
4  LaVine, *supra*, 257 F.3d at 992 (upholding school officials' decision to expel
5  student based on violent poem, even though student's right to freedom of
6  expression implicated).  Under this deferential standard, lower courts have upheld
7  school administrators' efforts to regulate even off-campus conduct based on safety
8  concerns.  *See* Cohn v. New Paltz Central Sch. Dist., 363 F. Supp. 2d 421, 434
9  (N.D.N.Y. 2005)  (denying substantive due process challenge to school's expulsion
10  based on student's possession of a handgun off school property); *see also* Doe v.
11  Mercer Island Sch. Dist. No. 400, 2007 U.S. Dist. LEXIS 5890 (W.D. Wash. Jan.
12  26, 2007)  (court declined to "substitute its own judgment . . . in determining how
13  to make schools safe in an era of increasing school violence," refusing to second-
14  guess the school administration's decision absent evidence that it "shock[ed] the
15  conscience") (*quoting* Brittain v. Hansen, 451 F.3d 982, 991 (9th Cir. 2006) ).
16    Here, the University's decisions were utterly reasonable and similarly
17  should not be disturbed.  USC dismissed Plaintiff in response to his violation of a
18  variety of school rules, including harassing and stalking a fellow classmate,
19  violating a Stay Away Order, and making potential threats of violence.  It
20  determined in its reasonable judgment that Plaintiff was not equipped with the
21  "essential characteristics and abilities required for completion of the M.D. Degree"
22  at the Keck School of Medicine, which includes having "sufficient mental stability
23  to provide reasonable assurance that candidates can complete the entire course of
24  study and participate fully in all aspects of medical training."
25    Plaintiff argues that instead of dismissing him, he should have been
26  granted a retroactive medical leave of absence and given permission to rejoin the
27  following year's medical school class.  Based upon all of the circumstances,
28  however, USC denied Plaintiff's request for retroactive leave and made the

16    **Defendant's Motion for Summary Judgment**

1  academic and safety related decision to dismiss him.  In reviewing Plaintiff's

2  ongoing behavior, including threats made while in psychiatric treatment, and

3  particularly given the current atmosphere at our country's educational institutions,

4  this reasonable decision should be accorded deference and upheld.   Therefore,

5  Plaintiff is not a disabled individual "otherwise qualified" to remain at USC

6  medical school and, as such, has not stated a *prima facie* case of discrimination

7  under Section 504 or the ADA.  For this reason alone, the Court can and should

8  grant summary judgment on Plaintiff's second and third claims for relief.

9  **B.    Plaintiff Does Not and Cannot Show that USC Expelled Him *Solely* on**

10  **the Basis of his Alleged Disability.**

11          Even if he were to make a *prima facie* showing of Section 504/ADA

12  discrimination, Plaintiff's claims still must be dismissed because he cannot

13  establish that he was expelled *solely* on the basis of an alleged psychiatric

14  condition.  As set forth in Section IV above, once USC has identified a legitimate

15  non-discriminatory reason for its decision to dismiss Plaintiff, the burden shifts

16  back to Plaintiff to demonstrate that USC's motivation for its actions was a pretext

17  for disability discrimination.  The current climate at educational institutions

18  nationwide compels administrators to take action in cases such as this one.  *See*

19  Defendants' Request for Judicial Notice; LaVine, *supra*, 257 F.3d at 987.  USC

20  officials were in no position to ignore or even take a "wait and see" approach to

21  Plaintiff's disturbing, ongoing behavior and threats.  As a matter of law, Plaintiff

22  cannot demonstrate that USC's decision to dismiss him was wholly motivated by a

23  desire to discriminate on the basis of his alleged mental disability.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

# VI.

## SUMMARY JUDGMENT SHOULD BE GRANTED AS TO PLAINTIFF'S SIXTH CLAIM FOR BREACH OF CONTRACT

In ruling on Defendants' Motion to Dismiss, the Court held that Plaintiff was not required to exhaust his administrative remedies with regard to his contract claim because its evidence is "intertwined" with his discrimination claims. (3/2/07 Minute Order at 12.) Therefore, because Plaintiff's discrimination claims fail as set forth in detail in Section V above, summary judgment is warranted on his contract claim as well.

Moreover, Plaintiff has no evidence of any alleged breach. A breach of contract claim is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff. *See, e.g.,* Careau & Co. v. Security Pacific Business Credit, Inc., 222 Cal. App. 3d 1371, 1388, 272 Cal. Rptr. 387 (1990) . Plaintiff alleges that his "contractual relationship" with USC included "all bulletins, regulations, policies and accreditation standards." (SAC, ¶65.) While he vaguely alleges that USC violated "numerous LCME accreditation standards and other contractual rights," the only specifics he provides are the supposed University policies and LCME[5] accreditation standards set forth in Exhibit L to his SAC:  (1) USC's policy prohibiting retaliation and (2) the LCME standards forbidding financial or political influence in the selection of students, and requiring medical schools to uphold scrupulous ethical principles in its students.  (SAC, ¶66, Ex. L thereto.)

/ / /

---

[5]  The Liaison Committee on Medical Education ("LCME") is the accrediting authority for medical education programs leading to the M.D. degree in U.S. medical schools.

1    As set forth in Section IV above, USC did not retaliate against
2    Plaintiff as a matter of law.  Therefore, the University did not breach any policy
3    prohibiting retaliation.  In addition, he cannot establish any contractual breach
4    based upon LCME standards.  Exhibit L to Plaintiff's SAC, a Petition he submitted
5    after his dismissal from USC to "formally document numerous violations [he]
6    personally witnessed and suffered during the course of his studies," is rife with
7    vague assertions about a group of "morally deficient" classmates whose infractions
8    he maintains that the University was "mandated to correct."  (SAC, Exhibit L at 1.)
9    This is a red herring.  Even if he had facts to support his conclusory claims about
10   the alleged misdeeds of his peers – which he does not – this has nothing to do with
11   whether USC breached any contractual obligation when it expelled him.

12   In fact, USC followed established policies and procedures throughout
13   the disciplinary process that led to Plaintiff's dismissal.  It adhered to the standards
14   on Academic Probation and Dismissal set forth in the Student Handbook, including
15   providing Plaintiff with notice and an opportunity to be heard.  (*See* Katsufrakis
16   Decl., ¶19 and Exh. O thereto.)  Indeed, Plaintiff was represented at his dismissal
17   hearing by an attorney, who presented written evidence and witnesses to testify on
18   Plaintiff's behalf.  After his dismissal, in accordance with University policy, the
19   decision was reviewed and upheld by an independent *ad hoc* committee comprised
20   of faculty members who were not involved even remotely in the decision to
21   dismiss.  Because Plaintiff can show no breach of any USC policy, his sixth claim
22   cannot withstand summary judgment.

### VII.

### SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S
### TENTH CLAIM FOR INJUNCTIVE RELIEF

26   Because Plaintiff's claims are without merit as set forth in detail
27   above, there is no basis to grant him any injunctive relief.  Accordingly, summary
28   judgment on this claim is warranted as well.

## VIII.

### CONCLUSION

For the foregoing reasons, Defendant University of Southern California respectfully requests that this Court grant this motion for summary judgment, or in the alternative, partial summary judgment, as to Plaintiff's first through fourth, sixth and tenth claims.

Dated:    March 28, 2008                    Respectfully submitted,

DAL SOGLIO & MARTENS LLP
Robin D. Dal Soglio


By:
Robin D. Dal Soglio
Attorneys for Defendants University of
Southern California, Robert Baughman,
Brian E. Henderson, Peter J. Katsufrakis and
James M.H. Ball

# PROOF OF SERVICE

STATE OF CALIFORNIA        )
COUNTY OF LOS ANGELES )

    I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 27240 Turnberry Lane, Suite 200, Valencia, CA 91355.

    On March 28, 2008, I caused to be served the foregoing documents described as:

**DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S  NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORTIES IN SUPPORT THEREOF**

on the person listed as follows:

Jeffrey David Isaacs
3553 West Chester Pike
PMB #177
Newtown Square, PA 19073

☒    (BY MAIL)  I enclosed the documents in a sealed envelope addressed to the persons above and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with this firm's practice for collecting and processing correspondence for mailing.  It is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid at our firm's office address in Valencia, California.  Service made pursuant to this paragraph shall be presumed invalid if the postal cancellation date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

Executed on March 28, 2008 in Valencia, California.

    I declare under penalty of perjury under the laws of the state of California that the above is true and correct.

| **Robin Fink** | |
| --- | --- |
| **Type or Print Name** | **Signature** |

1