1  JEFFREY DAVID ISAACS
2  3553 West Chester Pike
   PMB #177
3  Newtown Square, PA 19073
   Telephone:    (215) 609 - 4625
4  Mobile:        (610) 202 -1460
   E-Facsimile: (310) 564-0432
5  Email: jdi@alum.dartmouth.org
6
7
8
9
10              IN THE UNITED STATES DISTRICT COURT
11           FOR THE CENTRAL DISTRICT OF CALIFORNIA
12
13
14
15                                           **BY FAX**
16
17  JEFFREY DAVID ISAACS          )
                                  )    Case No. CV-06-3338 GAF (Ex)
18          Plaintiff, *pro se*,          )
                                  )
19              -V-                )    **PLAINTIFF'S OPPOSITION TO**
                                  )    **DEFENDANT USC'S MOTION**
20  UNIVERSITY OF SOUTHERN CALIFORNIA;  )    **TO ENFORCE SETTLEMENT**
                                  )
21          Defendant.            )
                                  )
22                                )
23                                )    Date:      May 12, 2008
                                  )    Time:      9:30 a.m.
24                                )    Court:     740 - Roybal
                                  )    Judge:     Honorable Gary A. Feess
25                                )
26
27
28

-1-

1
2

## PLAINTIFF'S OPPOSITION TO DEFENDANT USC'S
## MOTION TO ENFORCE SETTLEMENT

3
4
5
6
7
8

The Plaintiff has sought a settlement to restore his reputation as a medical student since January 17, 2006 - six months before this lawsuit was filed. In Plaintiff's January 2006 'settlement offer,' his only 'demands' were 1) that former Defendants Baughman and Henderson stop communicating about his standing in medical school, and 2) that the school schedule unbiased counseling services to more appropriately address the student dispute. Since January 2006, USC has vigorously sought to intimidate the Plaintiff from asserting his legal rights.

9
10
11
12
13
14
15

In October 2006, Plaintiff offered USC to settle the matter in sole exchange for his readmission to Keck. USC rejected this offer. In early 2007, Plaintiff offered to settle this matter in exchange for clearing his academic record along with a refund of his student loans. USC did not respond; the issue was again raised in this Court's case management scheduling conference in June, 2007. USC Counsel assured the Court, and afterwards the Plaintiff, that they would investigate the possibility of a settlement that cleared Plaintiff's records. At stated, Plaintiff also sought a refund of his student loans – approximately $62,000 – along with the academic record revision.

16
17
18
19
20
21
22
23
24
25
26
27

Plaintiff was informed that the monetary settlement request caused delays. Plaintiff proposed to USC Counsel a "partial settlement to reduce career risks to all parties," entailing a "dismissal of all charges against Katsufrakis, Ball, and Henderson in exchange for closing Plaintiff's student records at USC." USC found this intriguing, and finally in August 2007, they delivered their proposed partial settlement paperwork to Plaintiff. The settlement paperwork invoked terminology to "seal Plaintiff's academic and disciplinary records at USC." Plaintiff didn't fully understand what a "sealed" record meant, in an academic context. Because the main case was not being dropped, Plaintiff decided to accept the partial settlement, for whatever uncertain value that it was worth. Accordingly, Plaintiff signed USC's partial settlement agreement without fully understanding what implications a "sealed" record would have on his future. He immediately signed a joint stipulation to dismiss the case against the individual Defendants, even before USC executed the partial settlement via the appropriate signature.

28

1    Following his dismissal of the individual defendants, over a period of six weeks, Plaintiff

2    made at least a dozen requests for USC's signed & executed Partial Settlement agreement. Plaintiff

3    felt, and had informed USC, that USC's Counsel was using indirect and subtle tactics to, still, harass

4    him. Around the time Mr. Michael Payne became involved, USC finally provided the signed and

5    executed partial settlement agreement.

6    Mr Michael Payne then proposed to settle the case, in exchange for a tuition refund and a

7    'voluntary withdrawal' or, preferably, 'full expungement.' Three months later, in January 2007, USC

8    tentatively accepted to a voluntary withdrawal, but would not commit to any monetary settlement. In

9    the following days, USC mysteriously retracted their informal verbal agreement to clear Plaintiff's

10   records.

11   In February and March, Plaintiff made diligent efforts to find settlement terms that would be

12   acceptable to USC and still clear his record. Because USC was reluctant to alter academic records,

13   Plaintiff proposed that USC refund his tuition and characterize the refund as a "cancellation of

14   enrollment consideration paid." As such, Plaintiff hoped that his academic records would be rendered

15   insignificant, if indeed, his enrollment contract had been cancelled. After a week or so, USC rejected

16   this offer.

17   Around March 20th,  USC proposed  an agreement with a "general release" (Exhibit E, USC's

18   Motion to Enforce Settlement) that "unconditionally and irrevocably ... acquits .. Isaacs from any

19   and all charges, complaints .. controversies ... of any nature whatsoever, known or unknown,

20   suspected or unsuspected." The only exception to the "general release" is that it would not "release

21   debts unrelated to the lawsuit," i.e., student loans for tuition.

22   Simultaneously, USC delivered a scant discovery document production, implying to Plaintiff

23   that USC would utilize any means – including destroying, withholding, or losing evidence – to hurt

24   his case. Likewise, in violation of a USC restraining order, Keck Student Amy Baughman emailed

25   Plaintiff's close friend, George F. Baker, two years after Plaintiff departed from Keck. USC was

26   attempting to intimidate Plaintiff, by threatening to involve and annoy Plaintiff's friends. USC was

27   banking on the fact that they could create tension to intimidate Plaintiff into dropping his case against

28   USC for fear of unwanted publicity/involvement of friends; Mr. Baker's presence in California

during January 2006 would shed important testimony, should this case progress to trial.

-3-

On March 31st, Plaintiff made numerous requests to clarify the implications of the settlement agreement. Specifically, it was unclear to Plaintiff whether or not this "settlement agreement" truly cleared his record. USC eventually modified Paragraph 14.C to include the provision that "Isaacs is not required to disclose this matter to anyone." During what Plaintiff can only describe in retrospect as "wishful thinking," Plaintiff signed a settlement agreement hoping – but without any assurance – that it cleared his record. Moreover, on March 28th, Plaintiff wrote in an email to Dal Soglio that he "never thought" he would engage in settlement discussions with so little consideration on the table; USC's intimidation and delay tactics, and refusal to comply with discovery, clearly achieved a level of duress; considering that the Plaintiff voided the settlement within a week, it should not be enforced under these circumstances.

Indeed, the terms of settlement still remain unclear to Plaintiff. Plaintiff has been "acquitted" by USC, and released from all "promises and agreements [including enrollment if the contract is read literally, but not including enrollment if tuition is considered a 'debt unrelated to the lawsuit']" suggesting that his records at USC *might* be effectively nullified.  On the other hand, USC specifically refused to alter Plaintiff's academic records. It is unclear if Plaintiff's academic records are even "sealed," per the partial settlement agreement: Paragraph 22 of the Global Settlement Agreement states that it "supercedes" all previous agreements, effectively cancelling the previous partial settlement. Such an accident, given the time constraint and duress of threatened sanctions, should not be enforced.

In other words, the current settlement agreement creates an impossible state wherein Plaintiff is both expelled and acquitted, simultaneously, and possibly, released from his tuition enrollment consideration paid (in which case, USC owes Plaintiff $42,000 that is not accounted for in the settlement). It is unclear whether a  faculty execution of a "[wrongful] dismissal for failure to comply with Keck standards" is something that can be "acquitted," Plaintiff simply did not reach this analytical conclusion until several days after signing the contract. Moreover, as further evidence that Plaintiff didn't have time to thoroughly analyze the settlement at the time of signing, Plaintiff may have accidentally "unsealed" his records by superceding the prior partial settlement agreement (Paragraph 22 of Global Settlement.)

USC was well aware of the vague (and perhaps, meaningless) nature of the agreement; in Exhibit B of their Motion to Enforce Settlement (page 26), USC Counsel says "it is preferable to stick with 'this matter,' which is vague enough that you are free to apply it as you like."

The Plaintiff is concerned that his intended future career path is likely to require disclosure of academic records. While Plaintiff had "wishful thinking" that the voided settlement's contractual general release would suffice in clearing his records, in retrospect it seems most likely that Plaintiff's academic records will pre-empt any general contractual "acquittal." Because USC is unwilling to alter Plaintiff's academic records, and because Plaintiff now realizes that the "General Release" is probably not sufficient protection of his future career interests, Plaintiff informed USC that he is not willing to dismiss this case. Plaintiff has spent more than two years trying to clear his name, and only intended to enter into an agreement that, in absolute, unequivocal, and unambiguous terms, clears his USC record.

During the two days prior to the in-principle agreement, Plaintiff sought readmission reconsideration as a settlement possibility. Hence, a lot changed on March 28th. During the hours leading up to Plaintiff tentatively accepting USC's settlement on March 28th, USC threatened Plaintiff with sanctions for filing a Motion to Compel. Exhibit A contains an automatically transcribed "Vonage voicemail" left for Plaintiff by USC Counsel, in which USC Counsel used strong language and intonation to intimidate Plaintiff into settling and dropping the pending Motion to Compel. Plaintiff believes USC's threat of sanctions was absolutely frivolous. One day after USC Counsel missed the Rule 37 five-day deadline to complete the USC portion of the Joint Stipulation, USC Counsel complained that Plaintiff was without justification to file a motion to compel on most of his discovery request categories. Indeed, Plaintiff had verbally told USC Counsel six days earlier that he wouldn't move to compel about forty of the sixty Second Request for Document categories. Within hours of receiving her threatening voicemail, and even though it was after the deadline and USC Counsel had made no prior efforts to clarify in a timely manner, Plaintiff emailed USC Counsel an exact list of the items he intended to move to compel. Moreover, because Plaintiff reasonably believes USC has lost and or destroyed and or withheld evidence, he maintains that he would have had legal justification to move to compel production of all sixty of his requests.

Finally, Plaintiff never received a signed, initialed, and fully executed copy of the settlement agreement prior to when he declared it void. In Exhibit E of their Motion to Enforce Settlement, USC alleges that on April 7th they sent Plaintiff an executed settlement via email that is "initialed by Mr. Dougherty on each page." Plaintiff never received this email, and enquired with USC Counsel about proof of sending/service. USC Counsel was unable to provide such proof and acknowledged further email difficulties (Exhibit A). While USC has ridiculed Plaintiff on more than one occasion for his use of 'certified & tracked email' (which is endorsed by the California Bar), it seems that more correspondence has been lost by USC during this lawsuit than most individuals lose during a lifetime.

Taking these facts and the settlement timeline into consideration, the Plaintiff invokes the following respective defenses against the formation and the enforcement of an overly vague and contradictory settlement proposed by USC.

1)    Lack of Consideration - In exchange for dismissing a lawsuit in the United States District Court against USC, and claims that they have probably destroyed evidence, Plaintiff has clearly and consistently sought, at a minimum, that his academic record be cleared and student loans refunded. Absent any immediate duress or "wishful thinking" when he signed the agreement, the historical pattern shows consistent attempts, over several years, to clear his academic record and/or seek readmission to Keck. As such, an agreement that does not unequivocally clear Plaintiff's record is absent of sufficient consideration. (Should USC un-redact the dollar amount of settlement, it will also be clear that there is no significant economic consideration involved in this settlement.)

2)    'Non est factum' - The contract was signed without full knowledge of its meaning, absent any neglect on behalf of the Plaintiff. Indeed, it remains unclear to Plaintiff what exactly (if anything) an "acquittal" and "sealing" means, in light of the fact that USC will not alter academic records. Plaintiff had "wishful thinking" when he signed an agreement that used "acquittal" terminology, without fully understanding its meaning – if any.

3)    Illegality and/or impracticality – Plaintiff would be unable to answer future job applications or academic admissions applications that require disclosure of past disciplinary actions. On one hand, Plaintiff was "acquitted" by USC; on the other, his dismissal remains in

1    effect according to USC. Hence, any answer (short of divulging this entire lawsuit, and even
2    then, it would remain unclear) could be construed as a dishonest response.

3    4)    Duress – USC communicated, in a suspicious manner, with Plaintiff's close friends
4    during the days leading up to the alleged settlement formation. USC sent Plaintiff five
5    hundred pages of discovery documents that seemed to indicate to Plaintiff that they would not
6    abide by Federal Rules of evidence retention. In the hours leading up to Plaintiff agreeing in-
7    principle to USC's proposed settlement, USC even threatened to seek sanctions against
8    Plaintiff for filing a Motion to Compel. Having fought USC's retaliation for nearly three
9    years, Plaintiff claims some level of 'learned hopelessness' that prompted him, in retrospect,
10    to sign an insufficient settlement agreement. Indeed, within twenty-four hours of reaching an
11    in-principle agreement, it is clear that the Plaintiff was still angered over USC's frivolous
12    threat of sanctions (Exhibit A). Because Plaintiff regretted a decision made under some
13    duress, and subsequently voided the overly vague settlement within a week - before ever
14    receiving a fully initialed and executed copy - it should not be enforceable.

15    5)    Unclean hands – At this point, there is a legitimate question raised as to whether or not
16    USC had any good faith in entering into this agreement. USC has dodged discovery, used
17    delay tactics (including taking two months to sign the prior partial settlement agreement),
18    made careless errors with Plaintiff's confidential information, retaliated, invoked 'foul'
19    litigation tactics in communicating with Plaintiff's close friends, and finally, made an empty –
20    or entirely vague – settlement offer. Why a major institution such as USC would allegedly
21    desire settlement, yet offer almost nothing in tangible terms, causes Plaintiff to question
22    whether or not USC's lawyers had any good faith in entering this agreement. Indeed, Plaintiff
23    sued one of USC's lawyers, and presumably, USC's counsel are the only persons left at USC
24    with any animosity towards Plaintiff (the Deans have resigned and the students have long
25    since forgotten this matter).

26    6)    Undue influence – Since Plaintiff enrolled at Keck, his future career options and
27    ability to make a living depend, to a large extent, upon academic records issued by Keck.
28    Wrongfully dismissed, USC is able to exert undue influence on Plaintiff. Indeed, back in 2006
    this undue influence (in the form of retaliatory disciplinary hearings) caused Plaintiff to

-7-

accept blame for a student controversy in hopes that the matter would go away. In terms of the formation, or lack thereof, of a settlement contract, Plaintiff was again "hoping for the best" in signing a purported 'acquittal,' realizing that USC had unlimited legal resources and apparent disregard for the consequences of losing or destroying evidence.

7)    Unconscionability – The consideration offered is so obviously inadequate that to enforce this contract would be unfair to a Plaintiff who has spent years trying to either clear his academic record or be readmitted to USC Keck.

Respectfully submitted, this 28th day of April, 2008.



JEFFREY DAVID ISAACS

Plaintiff, *pro se*
3553 West Chester Pike
PMB #177
Newtown Square, PA 19073
Telephone: (215) 609-4625
Facsimile: (310) 564-0432
Email: jdi@alum.dartmouth.org

1

2                          **CERTIFICATE OF SERVICE**

3

4         I hereby certify that the following document

5

6    -     PLAINTIFF'S OPPOSITION TO DEFENDANT USC'S MOTION TO ENFORCE

7         SETTLEMENT

8

9         was   served   upon   the   represented   parties,   by   CERTIFIED   ELECTRONIC   MAIL   AS

10   STIPULATED BY THE PARTIES, by e-mailing copies thereof to:

11

12   Robin D. Dal Soglio
     27240 Turnberry Lane, Suite 200
13   Valencia, California 91355

14

15

16   On this 28th day of April, 2008

17                                              *Jeffrey D Isaacs*

18                                              JEFFREY DAVID ISAACS
                                                Plaintiff, *pro se*
19                                              3553 West Chester Pike
                                                PMB #177
20                                              Newtown Square, PA 19073
                                                Telephone: (215) 609-4625
21                                              Facsimile: (310) 564-0432
22                                              Email: jdi@alum.dartmouth.org

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT USC'S MOTION TO ENFORCE SETTLEMENT
No. CV-06-3338 GAF (Ex)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

## Pertinent Communication Between Plaintiff and USC Counsel

PLAINTIFF'S MOTION TO COMPEL USC TO COMPLY WITH DISCOVERY

No. CV-06-3338 GAF (Ex)

1

2

3

4

5

6

7

8

9

10

| from | 16613620736@vm.vonage.com |
| To | "Jeffrey Isaacs (12156094625)" <jeffreydi@gmail.com>, |
| Date | Fri, Mar 28, 2008 at 4:13 PM |
| Subject | Vonage Visual Voicemail from 16613620736 - New Voicemail Received |
| mailed-by | vm.vonage.com |
| signed-by | vm.vonage.com |

Date: Mar 28 2008 03:54:03 PM
From: 16613620736
To : Jeffrey Isaacs (12156094625)

"Mr. (Izefem?) [*Isaacs*]. This is (Robindolf Folio?) [*Robin Dal Soglio*].  And I am calling to discuss your motion to compel.  Frankly I'm just completely (be fedeled?) [*befuddled*] on how you possibly could be still moving on all 60 categories.  I do not understand what you are doing.  And frankly the fact you putting you see the time and effort to have to oppose 60 categories of documents the vast majority of which we have responded to and produce in full or have told you we don't have any you still filing a motion on it.  We are, I am putting you on notice that we will seek cost from you from having to oppose this.  If on the other hand you wanna be reasonable and limit your motion to the whatever number, 5,6,7,8 request where there still are documents outstanding where we have said  we wont produce and we can fight over that.  Then that makes more sense.  But frankly I believe the court is also gonna be infuriated when they see that we have produced for example your student file.  The file of Donna, whatever her name is.  And we produce those things to you.  Your written statements why you are still filing a motion on any of those request is frankly indicative of the problem since the beginning.  If you wish to call this off and pursue a more reasonably narrowed motion that is directed to the requests that are truly still in dispute please give me a call otherwise I'm going to be adding my request for sanctions and cause to my opposition to this motion."

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

1   From   JDI <jeffreydi@gmail.com>to   rdalsoglio@dm-lawfirm.com.certified.readnotify.com,
2   Robin Dal Soglio <rdalsoglio@dm-lawfirm.com>,
    date   Fri, Apr 11, 2008 at 7:34 PMsubject
3   Fwd: Vonage Visual Voicemail from 16613620736 - New Voicemail Received
4   mailed-by   gmail.com

5   Dear Ms Dal Soglio:

6   Attached is an automated transcript I received of the threatening and
7   misguided voicemail you left on March 28. As you know, this was one
    day after Amy Baughman emailed my friend George Baker, presumably
8   under your direction. As you also know, I very reluctantly, and
    regrettably, signed a legally void, meaningless settlement agreement
9   immediately after these threats.

10  I wish to advise you that any attempt to enforce this agreement via a
11  proceeding against me will result in a cross-complaint under
    anti-SLAPP which will seek redress for all the damned harassment your
12  firm and client have put me through AFTER they uncovered wrongdoing at
    USC and AFTER I filed the lawsuit.
13

14  Stop hiding evidence and tell your client to do the right thing.

15  Jeffrey Isaacs
16  On Tue, Apr 8, 2008 at 11:20 AM,  <rdalsoglio@dm-lawfirm.com> wrote:
    > > Mr. Isaacs -- You are incorrect that there is not a valid, binding
17  > > settlement agreement. If you do not immediately return the signed
    > > Stipulation for Dismissal, USC will proceed against you.
18  > >
19  > > I told you all along that I needed to proceed with the filing of the MSJ as
    > > we had not finalized the settlement documentation at that point. (Indeed,
20  > > you also proceeded with your filing.) So you have no reason to be
21  > > "confused" by my actions.  As you know, that is precisely why I agreed to
    > > execute and file a Stipulation to Strike those documents upon finalizing the
22  > > settlement agreement.  The settlement documentation has now been finalized.
    > >
23  > > I suggest you abandon your ridiculous, unsupported position and immediately
    > > return the proper documents.
24  > >
25  > > Robin D. Dal Soglio

26

27

28

-4-

| to | rdalsoglio@dm-lawfirm.com.certified.readnotify.com, |
| | Robin Dal Soglio <rdalsoglio@dm-lawfirm.com>, |
| date | Sat, Mar 29, 2008 at 5:36 PM |
| subject | Important follow-up for Monday Morning |
| mailed-by | gmail.com |

Dear Ms Dal Soglio:

This message is meant to parallel the finalization of the settlement contract on Monday. Until a contract is signed, I hope for your prompt response on these matters.

Can you please confirm as to why Ms Baughman emailed George Baker on March 26th 2008? I am able to produce a sealed affidavit from him if you can't confirm this. Not only is your theory regarding tracking incorrect (you denied that she emailed George), it is indicative of USC's defense all along, which is to deny almost everything.

I would also like to inquire if you can remove your request for sanctions in the Motion to Compel. One day after the deadline for you to answer the stipulation, you left me a harsh voicemail. I was in a meeting at the time (I can produce an affidavit as to this, as well), and called you back about an hour later. You didn't return my calls, and three hours later I provided you with written confirmation that I would remove the 15 or so items we cleared on the phone earlier this week. It befuddles me why you didn't follow up on our informal meet & confer discussions at a point earlier than one day after your deadline. I think it shows bad faith, and I will put in a

-5-

1   counter-request for sanctions against you.

2

3   Furthermore, I have another idea about the motion to compel. I may be

4   willing to waive my rights to the depositions and the motion to compel

5   if you can produce just a few more documents for me. This is because

6   I found some compelling evidence in USC Exhibits 250-500 that I didn't

7   first notice. I know you are withholding documents (or your client is)

8   and frankly, I have no duty to give you a third chance to comply with

9   the Federal rules. . In particular, I need the following 2 items:

10

11  1) The emails between Baughman and Henderson that you know, damn well,

12  is what this lawsuit is all about. To pass these off as a concerned

13  father is the job of a jury - and I don't think they'll fall for that.

14

15  2) The letter I personally watched Fred Kuyt write to Henderson and

16  Taylor back in February 2006. It was a significant letter (maybe 3

17  long paragraphs) which he wrote his angry response to what we all knew

18  - the school didn't trust me after I threatened a lawsuit. The nature

19  of his letter that I was a young man passionate about my beliefs in

20  right and wrong and that I didn't mean to seriously create any

21  problems. It was sent from his email, imrocdoc@earthlink.net. If you

22  really ever preserved evidence (or are not destroying evidence),

23  finding this should take about as long as a simple google search.

24  Advise ASAP.

25

26  Finally, will you provide a draft copy of your motion for summary

27  judgment to me before Monday afternoon? If so, everyone can be 100%

28  certain that I was fully informed at the point in which I signed the

PLAINTIFF'S MOTION TO COMPEL USC TO COMPLY WITH DISCOVERY

No. CV-06-3338 GAF (Ex)

1

2    from        JDI <jeffrey.isaacs.wg03@wharton.upenn.edu>

3    to          rdalsoglio@dm-lawfirm.com.certified.readnotify.com,
                 Robin Dal Soglio <rdalsoglio@dm-lawfirm.com>,

4    date        Sun, Apr 13, 2008 at 11:06 PM

5    subject     Email dated April 7th

     mailed-by   gmail.com

6
     Ms Dal Soglio
7

8    In today's filing, Exhibit E, I never received this email with Mr
     Dougherty's initials. Indeed, I searched my google mail for "Mr
9    Dougherty" to double check. Can you confirm that this email ever
     indeed was transmitted? If not, I will be filing an Application to
10   Strike on the following grounds:

11
     -Exhibit E contains private information in violation of 08-02
12   -Exhibit E does not exist; Plainitff would refer the Court to Google
     to confirm whether or not this email was ever transmitted
13   -The document misrepresents the nature of settlement requested by
14   Plaintiff (i.e. primarily non-monetary)

15   Please advise, otherwise an ex parte application to strike will be
     filed tomorrow.
16

17   Jeffrey Isaacs
     Reply Reply to all Forward
18

19      Robin Dal Soglio to JDI            show details Apr 14 (13 days ago)

20    from     Robin Dal Soglio <rdalsoglio@dm-lawfirm.com>

21    to       JDI <jeffrey.isaacs.wg03@wharton.upenn.edu>,

     date      Mon, Apr 14, 2008 at 2:52 PM
22
      subject  RE: Email dated April 7th
23
     Mr. Isaacs:
24

25   I retrieved the April 7 e-mail from my Sent folder in Outlook (which
     indicates to me that it was sent) and I can represent to you that I never
26   received a failure error after sending the email.  That being said, as you
     know, my e-mail has been behaving strangely, with things getting stuck in my
27   Outbox, and sending multiple copies of the same e-mail, for example.  So I
     apologize if you didn't receive the e-mail (which I am not conceding, of
28   course, but also won't deny to be a possibility) but please be assured that
     it is largely irrelevant nonetheless.  The important facts are that both you

-8-

1 | and Mr. Dougherty executed the Agreement.  In fact, you both executed it
2 | twice.

3 | In the meantime, I working on resolving the issue regarding Exhibit E.
| Attached hereto is a copy of a letter I faxed to the Clerk this morning.  I
4 | have also left her a voicemail message, but have not heard back as of yet.
| I will keep you apprised of my progress.
5

6
| Robin D. Dal Soglio
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION TO COMPEL USC TO COMPLY WITH DISCOVERY
No. CV-06-3338 GAF (Ex)