1 DAL SOGLIO & MARTENS LLP
2    Robin D. Dal Soglio (State Bar No. 155334)
3 27240 Turnberry Lane, Suite 200
  Valencia, California  91355
4 Telephone:  (661) 362-0736
  Facsimile:   (661) 244-4942
5 E-mail:  rdalsoglio@dm-lawfirm.com

6
  Attorneys for Defendants University of
7 Southern California, Robert Baughman, Brian
  E. Henderson, Peter J. Katsufrakis and James
8 M.H. Ball

9

10
                    UNITED STATES DISTRICT COURT
11
                  CENTRAL DISTRICT OF CALIFORNIA
12

13 | JEFFREY DAVID ISAACS, | CASE NO. CV-06-3338 GAF (Ex) |
   |---|---|
14 |         Plaintiff, | **DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S REPLY IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AGREEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
15 |     v. | |
16 | UNIVERSITY OF SOUTHERN CALIFORNIA; ROBERT WILLIAM BAUGHMAN; BRIAN E. HENDERSON; PETER J. KATSUFRAKIS; and JAMES M.H. BALL | |
17 | | |
18 | | |
19 | | Date:        May 12, 2008 |
20 | | Time:        9:30 a.m. |
   |         Defendants. | Courtroom:  740 – Roybal |
21 | | Hon. Gary A. Feess |

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES............................................ 1

I.    INTRODUCTION............................................................................. 1

II.   UNDISPUTED FACTS ................................................................... 2

III.  ARGUMENT ................................................................................ 6

IV.   CONCLUSION ............................................................................ 17

1

## CASES

2
3
Booth v. Bond,
    56 Cal. App. 2d 153, 132 P.2d 520 (1942)...........................................................7

4
5
C.I.T. Corporation v. Panac,
    25 Cal. 2d 547, 154 P.2d 710 (1944)..................................................................8

6
CrossTalk Prod., Inc. v. Jacobson,
    65 Cal. App. 4th 631, 76 Cal. Rptr. 2d 615 (1998) ....................................10, 11

7
8
Hayman v. Shoemake,
    203 Cal. App. 2d 140, 21 Cal. Rptr. 519 (1962) ..................................................7

9
10
In re Estate of Ricks,
    160 Cal. 467, 117 P. 539 (1911)........................................................................14

11
12
Indep. Ass'n of Mailbox Ctr. Owners, Inc. v. Superior Court,
    133 Cal. App. 4th 396, 34 Cal. Rptr. 3d 659 (2005) .........................................15

13
14
Jeff D. v. Andrus,
    899 F.2d 753 (9th Cir. 1989) ...............................................................................6

15
16
Kashani v. Tsann Kuen China Enterprise Co., Ltd.,
    118 Cal. App. 4th 531, 13 Cal. Rptr. 3d 174 (2004) ...........................................9

17
Meyer v. Benko,
    55 Cal. App. 3d 937, 127 Cal. Rptr. 846 (1976) .................................................6

18
19
Morris v. Redwood Empire Bancorp,
    128 Cal. App. 4th 1305, 27 Cal. Rptr. 3d 797 (2005) .......................................15

20
21
Odorizzi v. Bloomfield School District,
    246 Cal. App. 2d 123; 54 Cal. Rptr. 533 (1966) ........................................14, 15

22
23
Rich & Whillock, Inc. v. Ashton Develop., Inc.,
    157 Cal. App. 3d 1154, 204 Cal. Rptr. 86 (1984) ..............................10, 11, 12

24
25
Stockton Morris Co. v. Calif. Corp.,
    112 Cal. App. 2d 684, 247 P.2d 90 (1952)..........................................................9

26
27
Tarpy v. County of San Diego,
    110 Cal. App. 4th 267, 1 Cal. Rptr. 3d 607 (2003) ...........................................10

28

ii    **Defendant's Reply in Support of Motion to
Enforce Settlement**

# STATUTES

Cal. Civ. Code § 1565 ................................................................................................ 6

Cal. Civ. Code § 1569 ................................................................................................ 9

Cal. Civ. Code § 1575 .............................................................................................. 14

Cal. Civ. Code § 1639 ................................................................................................ 6

Cal. Civ. Code § 1670.5 ........................................................................................... 15

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Through this motion, Defendant University of Southern California ("Defendant" or "USC") requests the Court to issue an Order enforcing the terms of the Settlement Agreement negotiated and executed by Plaintiff and Defendant in this matter.  In its moving papers, Defendant set forth the facts demonstrating that Plaintiff entered knowingly and voluntarily into the Settlement Agreement with Defendant.  In his Opposition, Plaintiff rambles on about the history of this litigation, his frustration with the discovery process and procedures, his imagined belief that Defendant has destroyed or lost documents, and his self-described "wishful thinking" that he could have obtained a settlement that forced Defendant to alter Plaintiff's academic record at USC.  None of this is relevant to the determination of whether the Settlement Agreement is an enforceable contract.

Eventually, Plaintiff attempts to argue seven "defenses against the formation and enforcement" of the Settlement Agreement.  (Opp. 6:9-8:7.)  However, as set forth below, Plaintiff's arguments fail both factually and legally.  In the end, even Plaintiff's own account of the facts demonstrates that he made a knowing and voluntary decision to enter into the Settlement Agreement – but that he simply came to regret that decision later.  As Plaintiff himself puts it, "Plaintiff now realizes that the 'General Release' is probably not sufficient protection of his future career interests."  (Opp. at 5:8-9.)  As a result, Defendant respectfully requests that the Court enforce the Settlement Agreement and dismiss this action in its entirety.

/ / /

/ / /

/ / /

/ / /

**Defendant's Reply in Support of Motion to Enforce Settlement**

## II.

## __UNDISPUTED FACTS__

Although complaining about many irrelevant facts, Plaintiff does not dispute any of the material facts at issue herein. The following material facts are undisputed:

1. Settlement discussions have been ongoing throughout the course of this litigation. Declaration of Robin D. Dal Soglio attached to Motion to Enforce, ("Dal Soglio Decl."), ¶ 1.

2. In the course of the discussions, Plaintiff sought a settlement that would "clear his record" at USC. Opposition at 3:6-7 and 3:11-12.

3. USC consistently rejected any settlement proposal that involved destroying or altering academic records. Opposition at 3:12, 3:15-16, 4:14-15 ("USC specifically refused to alter Plaintiff's academic records.") and 5:7-8.

4. Throughout the negotiations, Plaintiff displayed understanding and skill in the negotiation process. Dal Soglio Decl., ¶ 2. He sought clarification on offers made by defense counsel, and made counter offers. He never displayed confusion over the substance or process of the settlement negotiations. Dal Soglio Decl., ¶ 2.

5. On Friday, March 28, 2008, Plaintiff sent defense counsel an email accepting Defendant's most recent settlement offer. He stated that the offer was "immediately accepted pending the forthcoming bilateral/ mutual general release terms agreement." Dal Soglio Decl., ¶ 3 and Exh. A thereto.

6. Plaintiff e-mailed defense counsel later that same evening, seeking to confirm that she received his earlier e-mail and to "set a schedule for finalizing the settlement contract." He stated that he would "need to

confirm (preferably in writing and verbally) this with you today as a binding contract…." Dal Soglio Decl., ¶ 3 and Exh. A thereto.

7.    On Monday, March 31, 2008, defense counsel provided a draft of the Settlement Agreement to Plaintiff via e-mail.

8.    Plaintiff e-mailed back comments and requested certain changes to the Agreement, including making "numerous requests to clarify the implications of the settlement agreement." Opp. at 4:1-2.  In direct response to Plaintiff's negotiation, "USC eventually modified Paragraph 14.C. to include a provision" requested by Plaintiff.  Opp. at 4:3.

9.    That afternoon, Plaintiff signed the Settlement Agreement (Opp. at 4:5-6) and e-mailed it to defense counsel, thereby fully accepting all the terms and extensively negotiated language of the Settlement Agreement.  Dal Soglio Decl., ¶ 6 and Exh. C thereto.

10.    USC executed the Settlement Agreement on April 2, 2008 and defense counsel forwarded the signed Settlement Agreement to Plaintiff on April 3, 2008.  Dal Soglio Decl., ¶ 6, E at p. 60.

11.    Plaintiff acknowledged receiving the "fully executed agreement" and agreed that "it now suffices as a binding agreement…." Motion to Enforce, Ex. E at p. 60. [1]

/ / /

/ / /

/ / /

---

[1]  Although Plaintiff denies receiving the signed *and initialed* Settlement Agreement, he does not deny receiving the first executed Settlement Agreement from defense counsel on April 3, 2008 and verifying that it "now suffices as a binding agreement." Motion to Enforce, Ex. E at 60.

**Defendant's Reply in Support of Motion to Enforce Settlement**

1    12.    On Wednesday, April 2, 2008, two days after first signing the

2            Settlement Agreement and five days after agreeing to the settlement

3            terms in principle, Plaintiff sent defense counsel *another* copy of the

4            signed Settlement Agreement, this time containing his handwritten

5            initials, rather than typed initials.  Dal Soglio Decl., ¶ 7 and Exh. D

6            thereto.

7    13.    Over the next several days, Plaintiff and Defendant's attorney

8            exchanged several emails regarding whether payment would be made

9            by USC by wire transfer or check and whether USC would be willing

10           to join in a stipulation to strike or seal the papers in support of the

11           motions filed on March 31.

12   14.    During the next several days, Plaintiff expressed no remorse over the

13           settlement itself, just interest in ironing out these post-settlement

14           issues.  Dal Soglio Decl., ¶ 8.

15   15.    On Friday, April 4, 2008, the second version of settlement agreement

16           (containing Plaintiff's handwritten initials) was executed by USC.

17           Dal Soglio Decl., ¶ 9 and Exh. E thereto.[2]

18   16.    On Tuesday, April 8, 2008, more than one week after he signed the

19           settlement agreement, Plaintiff emailed defense counsel to inform her

20           for the first time that he "intended to void the settlement."  Plaintiff

21           stated that he believed that he had accepted a settlement that "was far

22           short of what is appropriate" but explained that he "was honestly

23           trying to put this matter behind [him]."  Dal Soglio Decl., ¶ 11 and

24           Exh. F thereto.

25   / / /

26

27   [2] Although Plaintiff denies receiving a copy of this version of the Settlement
28   Agreement, there is no dispute that it was signed and initialed by USC.

Among other things, the final executed Settlement Agreement contained the following provisions relevant to its enforcement:

- Plaintiff has had the opportunity to review the Agreement with an attorney and either did so or has knowingly and voluntarily chosen not do so.  (Paragraphs 11 and 17)

- Plaintiff carefully read and fully understands all of the provisions of the Agreement and has been given a reasonable period of time to consider signing the Agreement, and is voluntarily doing so. (Paragraph 17)

- Plaintiff represents and agrees that no promises, statements or inducements have been made to him which caused him to sign this Agreement other than those expressly stated in this Agreement. (Paragraph 12)

- Plaintiff acknowledges that he might hereafter discover facts different from or in addition to those he now knows or believes to be true with respect to the claims released herein, and he expressly agrees to assume the risk of possible discovery of additional or different facts, and agrees that this Agreement shall be and remain effective in all respects regardless of such facts.  (Paragraph 16)

- This Agreement is the entire agreement between Isaacs and USC and fully supersedes any and all prior agreements and understandings between the parties *pertaining to its subject matter*.  (Paragraph 22, italics added)[3]

---

[3]  Plaintiff argues in his Opposition that Paragraph 22 of the Settlement Agreement may have "accidentally" superseded the provision contained in the parties' earlier partial settlement in which USC agreed not to "release or disclose Isaacs' disciplinary records to any third party" in exchange for the Plaintiff's dismissal of the Individual Defendants from the lawsuit.  (Opp. at 4:15-19, 25-

**Defendant's Reply in Support of Motion to Enforce Settlement**

# III.

# ARGUMENT

Basic contract principles apply in interpreting the formation and enforcement of a settlement agreement.  Jeff D. v. Andrus, 899 F.2d 753, 759 (9th Cir. 1989)  ("An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law.").  Accordingly, the Court must apply the contract law of the appropriate state, here California. Under California law, a legally enforceable contract requires mutuality of intent. Cal. Civ. Code § 1565.   Intent, however, is judged on an objective standard, *see* Meyer v. Benko, 55 Cal. App. 3d 937, 127 Cal. Rptr. 846, 848 (1976), and, wherever possible, "the intention of the parties is to be ascertained from the writing alone."  Cal. Civ. Code § 1639.

Plaintiff sets forth seven supposed defenses against the formation and enforcement of the Settlement Agreement.  As set forth herein, however, each of these "defenses" fails.

## A.   Lack of Consideration

Plaintiff's first argument put forth in order to invalidate the Settlement Agreement is that the settlement lacks consideration.  Plaintiff argues that any settlement "that does not unequivocally clear Plaintiff's record is absent sufficient consideration."  Opp. 6:17-18.  Of course, that is not the standard.  Plaintiff's desire to have achieved that result in settlement of his claims does not mean that a settlement without such a term lacks consideration.  In fact, as Plaintiff himself acknowledges, USC was adamant that it would not enter into a settlement which

---

28.) Paragraph 22 makes clear, however, that the Settlement Agreement only supersedes prior agreements reached on the "subject matter" covered by the Settlement Agreement.  The current "global" Settlement Agreement does not deal with or address sealing or disclosing Plaintiff's disciplinary records, and therefore has no effect on the prior partial settlement.

1   required it to alter or destroy Plaintiff's academic records.  Opposition at 3:12,

2   3:15-16, 4:14-15 ("USC specifically refused to alter Plaintiff's academic records.")

3   and 5:7-8.  Plaintiff was aware of that fact, and still agreed to the settlement.  He

4   cannot now claim that the settlement lacked consideration because it didn't contain

5   such a provision.  Given that USC denied the validity of Plaintiff's claims and was

6   simultaneously filing its Motion for Summary Judgment which might have resulted

7   in a complete dismissal of his lawsuit, Plaintiff faced the prospect of having his

8   entire lawsuit dismissed and receiving nothing.  Thus, he agreed to a monetary

9   settlement, and the monetary compensation agreed to was adequate consideration.[4]

10          A contract is supported by an adequate consideration if there is some

11  benefit to the promisor or detriment to the promisee.  <u>Booth v. Bond</u>, 56 Cal. App.

12  2d 153, 157, 132 P.2d 520 (1942); <u>Hayman v. Shoemake</u>, 203 Cal. App. 2d 140,

13  154, 21 Cal. Rptr. 519 (1962).   Under the Settlement Agreement, Plaintiff is to

14  receive some money.  Because Plaintiff received something of value, there is no

15  disputed issue of fact as to whether the Settlement Agreement was supported with

16  consideration.

17  **B.      _Non est factum_**

18          Plaintiff next argues that he signed the agreement without full

19  knowledge of its meaning.  Fraud may induce a person to assent to do something

20  which he would not otherwise have done, or it may induce him to believe that the

21  act which he does is something other than it actually is.  In the first case the act of

22  the defrauded person is operative though voidable; in the second case the act of the

23  defrauded person is void, because he does not know what he is doing and does not

---

[4]   USC contends that the settlement amount is substantial and most certainly
constitutes meaningful consideration.  While the amount of the settlement is
confidential, USC is willing if the Court deems it relevant and necessary to
provide the information under seal.

1  intend to do this act.  This distinction most commonly arises in the law of

2  negotiable paper.  "Where a person is fraudulently induced to sign or endorse a bill

3  or note in the reasonable belief that he is signing something else, he cannot really

4  be said to have made or indorsed the bill or note; hence the ancient plea of *non est*

5  *factum* is applicable."  C.I.T. Corporation v. Panac, 25 Cal. 2d 547, 549; 154 P.2d

6  710 (1944).  In this case, however, Plaintiff does not argue that he did not

7  understand that he was signing a Settlement Agreement and release of claims and

8  the doctrine of *non est factum* does not apply.

9          Rather, Plaintiff's real argument is that he didn't understand the

10  Settlement Agreement.  However, the Settlement Agreement specifically sets forth

11  that Plaintiff has had the opportunity to review the Agreement with an attorney and

12  either did so or has knowingly and voluntarily chosen not do so (Paragraphs 11 and

13  17) and that Plaintiff carefully read and fully understands all of the provisions of

14  the Agreement and has been given a reasonable period of time to consider signing

15  the Agreement, and is voluntarily doing so (Paragraph 17).  Thus, Plaintiff had

16  adequate opportunity to have an attorney review the Agreement, and even had an

17  attorney-friend assisting him in settlement negotiations with defense counsel for

18  approximately three to four months.  Therefore, Plaintiff can and should have

19  consulted with an attorney before signing the Agreement.  He should not be

20  allowed to complain now that he did not understand the Agreement.

21          Plaintiff claims that he "now realizes that the 'General Release' is

22  probably not sufficient protection of his future career interests…."  (Opp. at 5:8-9).

23  Plaintiff should not be allowed to escape his contractual agreement just because he

24  "simply did not reach this analytical conclusion until several days after signing the

25  contract."  (Opp. at 4:24-25.)

26  / / /

27  / / /

28  / / /

8    **Defendant's Reply in Support of Motion to
Enforce Settlement**

**C.**     **Illegality or Impracticality**

Plaintiff complains that he will be "unable to answer future job applications or academic admissions applications that require disclosure of past disciplinary actions."  Opp. at 6:26-27.  However, the fact that Plaintiff does not wish to disclose his academic and disciplinary history at USC to other educational institutions or potential future employers does not render the Settlement Agreement either illegal or impractical.

The consideration and the object of a contract must be lawful.  As a general rule, courts will not enforce an illegal bargain.  Kashani v. Tsann Kuen China Enterprise Co., Ltd., 118 Cal. App. 4th 531, 540, 13 Cal. Rptr. 3d 174 (2004).  If the effect of a contract is to accomplish an unlawful purpose, it will be deemed illegal regardless of the parties' intent.  Stockton Morris Co. v. Calif. Corp., 112 Cal. App. 2d 684, 690, 247 P.2d 90 (1952).

However, there is no evidence in the record establishing that the Settlement Agreement in this case was illegal.  Lawsuits often result in dismissal pursuant to written settlement agreements, and there is nothing unusual, illegal or impractical about the Settlement Agreement at issue herein.  There are simply no allegations, let alone evidence, that the Settlement Agreement at issue in this action was illegal or contained any illegal (or even impractical) terms.  What Plaintiff apparently views as "impractical" arises out of his own regret over his behavior at USC and the resulting discipline.  It does not arise out of the Settlement Agreement.

**D.**     **Duress**

Plaintiff argues that he was under duress because (1) "USC communicated in a suspicious manner, with Plaintiff's close friends during the days leading up to the alleged settlement formation," (2) "USC sent Plaintiff five hundred pages of discovery documents that seemed to indicate to Plaintiff that they would not abide by Federal Rules of evidence retention," and (3) USC "threatened

1   to seek sanctions against Plaintiff for filing a Motion to Compel." These

2   arguments are factually inaccurate and, regardless, do not support an argument of

3   duress as a matter of law.

4            California recognizes two forms of duress that, under certain

5   circumstances, may justify the invalidation of an otherwise valid agreement. First,

6   a court may invalidate an agreement where one party was subject to physical

7   coercion. *See* Cal. Civ. Code § 1569 (defining duress as unlawful or fraudulent

8   confinement of the person or unlawful detention of property). No physical

9   coercion is alleged in this case.

10           Second, an agreement may be invalid if it is the result of economic

11  coercion. Economic duress "may arise from an act that is so coercive as to cause a

12  reasonably prudent person, faced with no reasonable alternative, to agree to an

13  unfavorable contract." <u>Tarpy v. County of San Diego</u>, 110 Cal. App. 4th 267, 277,

14  1 Cal. Rptr. 3d 607 (2003)(internal quotations and citations omitted); *see also*

15  <u>CrossTalk Prod., Inc. v. Jacobson</u>, 65 Cal. App. 4th 631, 644, 76 Cal. Rptr. 2d 615

16  (1998)("When a party pleads economic duress, that party must have had no

17  reasonable alternative to the action it now seeks to avoid (generally, agreeing to a

18  contract). If a reasonable alternative was available, and there hence was no

19  compelling necessity to submit to the coercive demands, economic duress cannot

20  be established."). To set aside a contract because of economic duress, a court must

21  determine (1) that a coercive act took place and (2) that the act left the party

22  pleading duress with no "reasonable alternative" to the agreement.

23           A court may find a coercive act took place if the allegedly coercive

24  party asserted "a claim known to be false" or made "a bad faith threat to breach a

25  contract or to withhold a payment," *See* <u>Rich & Whillock, Inc. v. Ashton Develop.,</u>

26  <u>Inc.</u>, 157 Cal. App. 3d 1154, 1158-59, 204 Cal. Rptr. 86 (1984). "Whether the

27  party asserting economic duress had a reasonable alternative is determined by

28  examining whether a reasonably prudent person would follow the alternative

**Defendant's Reply in Support of Motion to Enforce Settlement**

course, or whether a reasonably prudent person might submit." <u>CrossTalk</u>, 65 Cal. App. 4th at 644. For example, "a reasonably prudent person . . . may have no reasonable alternative but to succumb when the only other alternative is bankruptcy or financial ruin." <u>Rich & Whillock</u>, 157 Cal. App. 3rd at 1159.

Here, there is no evidence that USC (or its counsel) engaged in any conduct that constitutes a coercive act. Instead, it is apparent from Plaintiff's own statements that the primary source of his duress is this very lawsuit that he initiated, including frustration with the discovery process, his imagined belief that USC destroyed documents, and a single phone message he received from defense counsel after he filed a frivolous and bad faith motion to compel. [5]

Plaintiff's bizarre accusation that "USC communicated in a suspicious manner, with Plaintiff's close friends during the days leading up to the alleged settlement formation," is almost too strained to require a response. First, Plaintiff's

---

[5]  Although Plaintiff asserts that USC threatened to seek sanctions against Plaintiff for filing the motion to compel, the evidence submitted makes clear that USC was giving notice of its intent to seek sanctions in response to Plaintiff's filing of a frivolous motion to compel responses *to over 60 document requests* after weeks of intensive and good faith meeting and conferring which resulted in USC making enormous (and mostly unwarranted) concessions and producing over 500 pages of additional documents (to which Plaintiff was in all probability not entitled) all in an effort to avoid a motion to compel. As Plaintiff's own evidence reveals, USC's counsel was not using a threat of sanctions in order to coerce a settlement of the lawsuit, but rather was informing Plaintiff of USC's intent to seek sanctions if Plaintiff did not tailor his Motion to Compel to address only the 5-8 discovery requests that remained in dispute rather than requiring USC to also oppose the Motion as to the at least 50 categories which were no longer contested. Indeed, Plaintiff even admits that he emailed defense counsel within hours of receiving her voicemail message, agreeing to eliminate from the motion many of the requests that were no longer at issue – unfortunately, this was after defense counsel had already spent significant time preparing USC's portion of the Joint Stipulation on those requests.

1  own evidence makes clear that it was not USC that engaged in any such

2  communications.  Plaintiff alleges that Amy Baughman, the female student that he

3  once stalked and harassed at USC contacted one of his friends.  Second, Plaintiff's

4  theory that USC prompted this contact in order to intimidate Plaintiff into

5  "dropping his case" by involving his friends is inconsistent with Plaintiff's next

6  statement that Mr. Baker has "important testimony" to share.  Presumably, even if

7  USC had initiated the contact by Ms. Baughman (which it did not), such contact

8  should please Plaintiff, who seems eager for Mr. Baker to share his "important

9  testimony" about his "presence in California during January 2006...."[6]

10      In addition, courts have repeatedly recognized that simple hard

11  bargaining must not be confused with economic coercion.  <u>Rich & Whillock</u>, 157

12  Cal. App. 3d at 1159, 204 Cal. Rptr. at 90.

13      Moreover, even if USC had engaged in a coercive act, Plaintiff has

14  failed to present any evidence that suggests he had no "reasonable alternative" to

15  settling the lawsuit.  If it was the fear of threatened sanctions that motivated him,

16  that fear was dealt with when he contacted USC's counsel several hours later and

17  agreed to eliminate several categories of documents from his motion to compel.

18  He thus could have proceeded with his lawsuit and his motion to compel.  There is

19  nothing in the record that suggests this alternative was not available or would

20  somehow have been inadequate.

21

22  ────────────────

23  [6]  As USC's counsel explained in an email exchange with Plaintiff (Dal Soglio
       Decl, Ex. A at p. 15), she had sought voluntary cooperation from Ms.
24     Baughman in attempting to locate additional documents responsive to
       Plaintiff's document requests.  In so doing, both USC and Ms. Baughman were
25     going beyond any legal requirement in locating such documents, since such
       documents were not in the possession, custody or control of USC.  If in
26     connection therewith, Ms. Baughman contacted Mr. Baker, it was without the
27     knowledge of USC or its counsel.

28

1    　　　Finally, Plaintiff's own conduct in the days following the parties'

2    agreement belies his claim that he entered into the agreement only under duress.

3    Upon receipt of the draft agreement, after having a weekend to think about the deal

4    he had struck, he provided substantive comments and requested changes to the

5    Agreement.  On March 31, 2008, three days after the initial agreement was reached

6    in principle, Plaintiff signed the written Settlement Agreement and e-mailed it back

7    to defense counsel.  Even after signing the Agreement, Plaintiff continued to seek

8    cooperation from defense counsel in effectuating the settlement.  He sought an

9    agreement to wire the settlement funds rather than mailing a check.  He requested

10   that Defendant join in a Stipulation to strike or seal the various documents filed

11   with the Court on March 31.  He even *re-initialed* the pages of the Settlement

12   Agreement on April 2, apparently concerned that the type-written initials might not

13   be enforceable!  This conduct completely contradicts Plaintiff's assertion that he

14   was under duress when he agreed to the settlement.

15   　　　Thus, Plaintiff cannot establish that he suffered from any legally

16   cognizable economic duress.  Accordingly, the Settlement Agreement should be

17   enforced.

18   **E.    Unclean Hands**

19   　　　Plaintiff argues that USC has unclean hands because it "dodged

20   discovery, used delay tactics …, made careless errors with Plaintiff's confidential

21   information, retaliated, invoked 'foul' litigation tactics in communicating with

22   Plaintiff's close friends, and finally, made an empty – or entirely vague –

23   settlement offer."  Opp. at 7:15-20.

24   　　　Nowhere does Plaintiff explain how USC's hands were unclean in

25   connection with negotiating the Settlement Agreement.  Plaintiff's vague assertion

26   that that USC's hands were unclean in making an "empty – or entirely vague"

27   settlement offer is belied by the fact that Plaintiff accepted the offer.  The crux of

28   Plaintiff's position is that he believes (wrongly) that USC's hands were unclean in

1  connection with discovery process.  If that were so, then Plaintiff's recourse was to

2  proceed with his discovery motion and seek redress under Fed. R. Civ. P. 37.  Even

3  if true, his argument has no bearing on the enforceability of the Settlement

4  Agreement.

5  **F.    Undue Influence**

6    Plaintiff next urges that because USC wrongfully dismissed him from

7  its medical school, it somehow is able to exert undue influence on him.  It is

8  unclear what connection this has to the enforceability of the Settlement Agreement.

9    Undue influence is "taking an unfair advantage of another's weakness

10  of mind, or . . . taking a grossly oppressive and unfair advantage of another's

11  necessities or distress."  Cal. Civ. Code § 1575.  Undue influence is persuasion

12  which tends to be coercive in nature, persuasion which overcomes the will without

13  convincing the judgment.  In re Estate of Ricks, 160 Cal. 467, 480-482, 117 P. 539

14  (1911).  Undue influence normally involves persons who bear a confidential

15  relationship to one another.  Odorizzi v. Bloomfield School District, 246 Cal. App.

16  2d 123; 54 Cal. Rptr. 533 (1966).  In essence, undue influence involves the use of

17  excessive pressure to persuade one vulnerable to such pressure, pressure applied by

18  a dominant subject to a servient object.  In combination, the elements of undue

19  susceptibility in the servient person and excessive pressure by the dominating

20  person make the latter's influence undue, for it results in the apparent will of the

21  servient person being in fact the will of the dominant person.  Odorizzi, 246 Cal.

22  App. 2d 123.

23    However, as the Odorizzi court stated, "The difficulty, of course, lies

24  in determining when the forces of persuasion have overflowed their normal banks

25  and become oppressive flood waters.  There are second thoughts to every bargain,

26  and hindsight is still better than foresight.  Undue influence cannot be used as a

27  pretext to avoid bad bargains or escape from bargains which refuse to come up to

28  expectations. . . . If we are temporarily persuaded against our better judgment to do

14    **Defendant's Reply in Support of Motion to Enforce Settlement**

1  something about which we later have second thoughts, we must abide the

2  consequences of the risks inherent in managing our own affairs." <u>Odorizzi</u>, 246

3  Cal. App. 2d at 132.

4          In this case, Plaintiff apparently believes he struck a bad bargain.

5  However, this does not lead to any conclusion that there was undue influence in

6  connection with entering into the Settlement Agreement.  Plaintiff's belief in

7  hindsight that he made a bad bargain is insufficient grounds for setting aside the

8  Settlement Agreement.

9  **G.    <u>Unconscionability</u>**

10          As an alternative ground to invalidate the Settlement Agreement,

11  Plaintiff also argues that the Agreement is unconscionable.  However, there is no

12  basis for a finding of unconscionability in this case.

13          The doctrine of unconscionability is codified in California Civil Code

14  §1670.5.  California law recognizes that the term "unconscionable" has "both a

15  procedural and a substantive element, ***both of which must be present*** to render a

16  contract unenforceable."  <u>Indep. Ass'n of Mailbox Ctr. Owners, Inc. v. Superior</u>

17  <u>Court (Mail Boxes, etc., USA, Inc.)</u>, 133 Cal. App. 4th 396, 34 Cal. Rptr. 3d 659,

18  667-68 (2005)(emphasis added).  The procedural element focuses on the unequal

19  bargaining positions and hidden terms common in the context of adhesion

20  contracts.  While courts have defined the substantive element in various ways, it

21  traditionally involves contract terms that are so one-sided as to "shock the

22  conscience," or that impose harsh or oppressive terms.  <u>Morris v. Redwood Empire</u>

23  <u>Bancorp</u>, 128 Cal. App. 4th 1305, 1317, 27 Cal. Rptr. 3d 797 (2005).

24          As to the procedural component of unconscionability, the Settlement

25  Agreement was not a contract of adhesion, as evidenced by the fact that the parties

26  spent the better part of the day negotiating its terms.  Plaintiff did not simply

27  accept and sign the first draft of the contract sent to him.  He emailed comments

28  back and forth with defense counsel, demonstrating his negotiating ability and

15    **Defendant's Reply in Support of Motion to Enforce Settlement**

intelligence, and as he himself admits he successfully convinced USC to make modifications to his benefit.  (Opp. at 4:3.)  Moreover, there is no evidence that the Settlement Agreement contained any "hidden terms."  The release of claims contained in the Settlement Agreement is obvious and straightforward.  Finally, Plaintiff was under no time pressure to finalize and sign the Settlement Agreement. Although Plaintiff asserts that he "didn't have time to thoroughly analyze" the settlement agreement (Opp. at 4:26), the facts are otherwise.  Plaintiff had no deadline placed on him, but he chose for his own unknown reason to sign the Agreement on March 31, 2008, without taking additional time to review and analyze (or have an attorney review) it.[7]

Even if procedural unconscionability existed, there is absolutely no indication that any of the provisions of the Settlement Agreement are substantively unconscionable.   The Agreement is not one-sided and does not impose harsh or oppressive terms.  Plaintiff received a monetary settlement.  In addition, Plaintiff requested and received from USC a *mutual* release of liability in the Settlement Agreement.  There is nothing about any of the terms in the Agreement that is "harsh or oppressive" or "shocks the conscience."

Accordingly, the Settlement Agreement is neither procedurally or substantively unconscionable, certainly not both, and should be enforced.

/ / /

/ / /

/ / /

---

[7] Although both parties had originally hoped to sign the Agreement prior to filing their respective motions (USC's summary judgment motion and Plaintiff's motion to compel) on Monday, March 31, they did not meet that deadline, and each party proceeded with filing its respective motion that day, while continuing to negotiate the Settlement Agreement.

**Defendant's Reply in Support of Motion to Enforce Settlement**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.

## CONCLUSION

For the foregoing reasons and those set forth in its moving papers, Defendant University of Southern California respectfully requests that this Court issue an order enforcing the Settlement Agreement and dismissing this Action with prejudice in accordance with the Settlement Agreement.

Dated:    May 5, 2008              Respectfully submitted,

DAL SOGLIO & MARTENS LLP
        Robin D. Dal Soglio


By:_____
        Robin D. Dal Soglio
Attorneys for Defendants University of
Southern California, Robert Baughman,
Brian E. Henderson, Peter J. Katsufrakis and
James M.H. Ball

**Defendant's Reply in Support of Motion to Enforce Settlement**