JEFFREY DAVID ISAACS
3553 West Chester Pike
PMB #177
Newtown Square, PA 19073
Telephone:    (215) 609-4625
Mobile:        (610) 202-1460
E-Facsimile: (310) 564-0432
Email: jdi@alum.dartmouth.org

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

JEFFREY DAVID ISAACS                     )
                                         )      Case No. CV-06-3338 GAF (Ex)
        Plaintiff, *pro se*,             )
                                         )
        -V-                              )      **PLAINTIFF'S MOTION
                                         )      FOR RECONSIDERATION
UNIVERSITY OF SOUTHERN CALIFORNIA;       )      OF MOTION TO ENFORCE
                                         )      SETTLEMENT AGREEMENT**
        Defendant.                       )
                                         )      Date:  Monday, June 16, 2008
                                         )      Time: 09:30 a.m.
                                         )      The Honorable Gary A. Feess
                                         )      740 - Roybal
                                         )

**BY FAX**

-1-



1    Plaintiff hereby moves for this Court to reconsider its order enforcing a settlement agreement

2    signed under duress. Specifically, Plaintiff applies for the Court to set a time and date for an

3    evidentiary hearing on Plaintiff's defense of economic duress and related claims of evidence

4    spoliation. The one-week to prepare his opposition was insufficient for Plaintiff, as at the time, he did

5    not possess all relevant documents to oppose Defendant USC's Motion to Enforce Settlement

6    Agreement (see, infra, documents on recent financing and career milestone). Plaintiff did not request

7    a continuance because he thought oral argument would precede an outright dismissal of the case.

8    Moreover, Plaintiff did not re-plead all the facts showing duress that he had already pleaded earlier in

9    this litigation. As such, he thought the Court would take these matters into consideration when

10   deciding the Motion to Enforce the Settlement. Furthermore, because Plaintiff claims that USC's

11   evidence spoliation contributed to his economic distress, he applies for the Court to address that issue

12   in parallel with deciding the Motion to Enforce Settlement agreement. USC dodged discovery since

13   October 2007 (see affidavit of Michael Payne), and for a *pro se* litigant with known financial

14   hardship, such unfair tactics merit a more thorough review of Plaintiff's claims of economic duress.

15   Plaintiff was under economic duress when he signed the settlement (which USC has not even

16   paid, as per the agreement). Under seal, Plaintiff is able to provide for the Court the following

17   documentation: 1) Plaintiff received unexpected and significant financing approximately four days

18   after signing the settlement agreement that enabled him to pursue this case and, without which, he

19   would have had major liquidity problems, and 2) Plaintiff had a major career milestone during the

20   two weeks following signature of the settlement agreement, which he could not postpone. USC was

21   likely aware of both of these factors, as Plaintiff informed them he was in Saint-Jean France and the

22   settlement was even signed there. Because USC had gone ahead and filed a Motion for Summary

23   Judgment and sanctions against Plaintiff before the evidence spoliation issue was sorted out, Plaintiff,

24   temporarily, had neither the time nor the money to oppose any more of USC's two-year retaliation

25   and delay tactics. Put simply, USC had six months to prepare its Motion for Summary Judgment and

26   even modified the case management schedule to secure an advantageous filing date that coincided

27   with Plaintiff's Motion to Compel; normal procedure would have required discovery to be completed

28   prior to filing a Motion for Summary Judgment. Plaintiff had one week to respond (until Judge Eick

1  ordered differently) during a week that coincided with a major career milestone that could not be

2  postponed. Again, Plaintiff, temporarily, did not reasonably have time or money to continue fighting

3  what seemed like an endless cover-up by USC.

4       Even if USC didn't directly cause Plaintiff's immediate hardship during the settlement

5  negotiation process, it was reasonably forseeable that USC's retaliatory and delay tactics were likely

6  to create economic duress for a *pro se* Plaintiff within two years. Indeed, on or around March 31st, the

7  Plaintiff had no reasonable alternative other than to sign the settlement agreement. Plaintiff believes

8  his sealed evidence, when presented to the Court, will make this plainly obvious.

9       The Court concluded that USC's threat of sanctions were "ordinary discourse incumbent with

10 litigation." Even if they were, and Plaintiff suspects otherwise, the settlement discussions were not an

11 isolated event. They must be looked at in the overall context of a thirty month history of aggressive

12 tactics by USC to take advantage of their position of power over the Plaintiff. At USC, Plaintiff was a

13 recipient of financial aid at the point in time when USC retaliated and suspended him. *USC*

14 *apparently attempted to incarcerate Plaintiff as a terrorist* (see Exhibit 1) even after UCLA

15 corrected its Tarasoff warning and after USC probably deduced litigation was imminent. Moreover,

16 Plaintiff fought against bizarre delay tactics for two years, including USC defaulting on answering a

17 Complaint due to "lost mail" and USC actually succeeding in continuing a United States District

18 Court trial due to purported "hard drive failure." Furthermore, the Court has not yet held a hearing on

19 Plaintiff's substantiated allegations that USC is guilty of evidence spoliation. Hence, although the

20 Court determined that it would have been straightforward for "Isaacs to oppose the motion [for

21 sanctions]," thus far, USC has demonstrated an awesome ability to secure prejudicial faculty votes

22 and legal orders (with the exception of the LAPD Anti-Terrorist Unit) in their favor. From the

23 moment Baughman and Henderson discussed Plaintiff's threat of litigation, USC acted 'above the

24 law' and has apparently succeeded in proving this.

25       In summary, while certainly the Court can recognize that *eventually and ultimately* the legal

26 system will protect the Plaintiff's Constitutional rights, the **Court cannot conclude as a matter of**

27 **law that Plaintiff was not under economic duress as a result of a retaliatory dismissal from USC**

28

**Medical School, attempted incarceration, dilatory litigation tactics, and probable evidence spoliation.**

Should the Court order its production, Plaintiff's medical records for outpatient care from UCLA/Century City would indicate that the Plaintiff has been under duress ever since the retaliatory dismissal from USC medical school.

For the foregoing reasons, Plaintiff requests that this Court hold evidentiary hearings on both Plaintiff's economic duress that will void the March 31st settlement agreement, as well as a hearing on the matters of evidence spoliation, in order to support Plaintiff's allegations that he was under economic duress as a result of unfair and illegal litigation delays.

Respectfully submitted, this 19th day of May, 2008.

JEFFREY DAVID ISAACS

Plaintiff, *pro se*
3553 West Chester Pike
PMB #177
Newtown Square, PA 19073
Telephone: (215) 609-4625
Facsimile: (310) 564-0432
Email: jdi@alum.dartmouth.org

-4-

**CERTIFICATE OF SERVICE**

I hereby certify that the following document

- PLAINTIFF'S MOTION FOR RECONSIDERATION OF MOTION TO ENFORCE SETTLEMENT

was served upon the represented parties, by CERTIFIED ELECTRONIC MAIL AS STIPULATED BY THE PARTIES, by e-mailing copies thereof to:

Robin D. Dal Soglio
27240 Turnberry Lane, Suite 200
Valencia, California 91355

On this 19th day of May, 2008

JEFFREY DAVID ISAACS
Plaintiff, *pro se*
3553 West Chester Pike
PMB #177
Newtown Square, PA 19073
Telephone: (215) 609-4625
Facsimile: (310) 564-0432
Email: jdi@alum.dartmouth.org

PLAINTIFF'S MOTION FOR RECONSIDERATION OF MOTION TO ENFORCE SETTLEMENT AGREEMENT
No. CV-06-3338 GAF (Ex)

1
2
3
4
5
6
7
8

# EXHIBIT    1

9    - USC Work Product indicating *USC attempted to incarcerate Plaintiff*

10    **- The LAPD Anti-Terrorist Major Crimes Unit to whom they complained "was not interested"**

11    -After hearing USC's notification, the  LAPD  Anti-Terrorist detective stated his investigation **"did

12    not believe Isaacs would carry out any threat."**

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-2-

Donna Budar-Turner

From:        Raquel Torres-Retana
Sent:        Tuesday, March 21, 2006 1:14 PM
To:          Donna Budar-Turner
Subject:     FW: Re: MED-Student Incident

Attachments:    Gloria Graham.vcf

RECEIVED

MAR    20 5

STUDEN' JUDICIAL AFFAIRS
& COMMUNITY STANDARDS

Gloria Graham.vcf
    (441 B)

RECEIVED

MAR 2 2 2006

STUDENT JUDICIAL AFFAIRS
& COMMUNITY STANDARDS

-----Original Message-----
From: Gloria Graham [mailto:GGraham@caps.usc.edu]
Sent: Tuesday, March 21, 2006 12:32 PM
To: Denzil Suite; Lynette Merriman; Raquel Torres-Retana; lswhite@usc.edu
Subject: Fwd: Re: MED-Student Incident

Additional information.

Gloria

Gloria S. Graham
Captain, Operations
Department of Public Safety
University of Southern California
3667 McClintock Avenue
Los Angeles, CA  90089

Telephone:  213-740-4904
Los Angeles, CA  90089

TEL:  (213)-740-4904
E-MAIL:  ggraham@caps.usc.edu

"Achieving Excellence Every Day"

>>> Joshua Voyda 3/20/2006 2:52:16 PM >>>
Captain,

I contacted Detective Munoz, one of the Anti-Terrorist Major Crimes guys who met with us,
and briefed him on the situation.  His unit is not interested.  He says we have done the
right thing in filing a criminal threats PIR, but since there is no specified,
identifiable target in his statements, there is not much LA can do.  I gave him Isaacs'
information, and asked him to check the Automated Firearms System.  Isaacs does not have a
record of firearm ownership.

His parents may not be able to assist, since his address in the USC system is in
Pennsylvania.  However, the doctor said that as of last Tuesday, his mother was in the
area.

Name: Isaacs, Jeffrey D.
Major: MED - Medicine
School: School of Medicine
Class: Doctorate
Address: 157 Orchard Court
Blue Bell, PA 19422-2716
E-Mail: jdisaacs@usc.edu
Updated: March 20, 2006

1

USC 0210